

**JARROD L. SCHAEFFER**
646-970-7339 (direct dial)
jschaeffer@aellaw.com
aellaw.com

256 Fifth Avenue, 5th Floor
New York, New York 10001

February 10, 2025

**By ECF**

Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *United States v. Linda Sun, a/k/a "Wen Sun," "Ling Da Sun," and "Linda Hu," and Chris Hu*, S1 24 Cr. 346 (BMC) (TAM)

Your Honor:

      We represent Linda Sun in the above-referenced matter and, on behalf of both defendants, write pursuant to Rule IV.B of the Court's Individual Practices to respectfully request a premotion conference regarding additional motions in this case. Specifically, the defense requests leave to file three motions seeking:

    (i)    to suppress certain electronic evidence unlawfully searched by the government;

    (ii)    to suppress evidence seized pursuant to a premises search warrant, as well as for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978); and

    (iii)    if necessary, a hearing pursuant to *United States v. Monsanto*, 491 U.S. 600 (1989), to obtain the release of certain assets necessary to fund the defendants' legal defense.

The grounds for each motion are briefly described below. The defense anticipates that it would request three weeks in which to file these motions.

    **I.**    **Motion to Suppress Electronic Evidence**

      *First*, the defense seeks leave to file a motion to suppress certain electronic evidence that was unlawfully seized by the government, along with any later evidence that flowed from such actions. In particular, the defense seeks to suppress any evidence seized pursuant to two warrants for electronic information sought and issued in 2022.

      Executing a warrant for electronic data requires the government, within a reasonable time, to identify what data it claims was properly seized pursuant to that warrant. *See, e.g.*, *United States*

*v. Metter*, 860 F. Supp. 2d 205, 215 (E.D.N.Y. 2012) ("[T]he Fourth Amendment requires the government to complete its review, *i.e.*, execute the warrant, within a 'reasonable' period of time."); *accord United States v. Wey*, 256 F. Supp. 3d 355, 383 (S.D.N.Y. 2017) (same); *see also* Fed. R. Crim. P. 41(e)(2)(B); *Lauro v. Charles*, 219 F.3d 202, 209 (2d Cir. 2000) ("[T]he Fourth Amendment's proscription of unreasonable searches and seizures . . . ensures reasonableness in the manner and scope of searches and seizures that are carried out." (cleaned up)). To do so, the government typically has "several months" to complete a responsiveness review and identify material within a warrant's scope, *see, e.g.*, *Metter*, 860 F. Supp. 2d at 215, unless particular circumstances make a longer period reasonable. Requiring that review helps to prevent valid warrants from being converted into impermissible general warrants. *See United States v. Nejad*, 436 F. Supp. 3d 707, 734 (S.D.N.Y. 2020) (quoting *Metter*, 860 F. Supp. 2d at 214–15) ("The objective of such a responsiveness review is 'to determine whether the evidence that the government seized fell within the scope of the categories of information sought in the search warrants.'" (internal alteration omitted)); *see also United States v. Shi Yan Liu*, 239 F.3d 138, 141 (2d Cir. 2000) (observing that "a search that greatly exceeds the bounds of a warrant and is not conducted in good faith is essentially indistinguishable from a general search").

Attempting to avoid unnecessary motion practice, the defense requested certain basic information about the government's review of electronic data at the discovery conference on November 21, 2024. The defense later detailed its request in a letter to the government on December 2, 2024. Following several additional inquiries, the government eventually filed a disclosure letter on January 28, 2025. (*See* Dkt. 62.) That letter contains some of the information requested by the defense—and a stunning admission.

In relevant part, the government stated that data sought pursuant to the search warrant bearing docket number 22-MC-858 (the "Email Warrant") was "received from Google on or about April 11, 2022." (*Id.* at 2.) About a month later, the "returns were processed and made available to reviewing agents on or about May 19, 2022 and reviewed thereafter for approximately two months, as guided by three charts of header information regarding Linda Sun's email account."[1] (*Id.*) After completing that review, agents generated a "responsiveness report" and completed execution of the Email Warrant. Thereafter, however, "the search warrant returns, *including the reviewing agents' responsiveness report*, were inadvertently expunged from FBI computers." (*Id.* (emphasis added).) Remarkably, no one seems to have noticed the destruction of this material for more than two years.

When the government finally realized the material had been destroyed "[i]n or about May 2024," agents performed a new search of the returns and generated a new responsiveness report, supposedly "rel[ying] primarily on the same three header charts to regenerate what they believed to be an identical responsiveness report." (*Id.*) That new search took more than a month, lasting from "May 31, 2024" to "July 3, 2024." (*Id.*) And as the government tacitly concedes, the new

---

[1] The origin of this header information remains unclear, and the referenced charts were not produced until late last month. (*See* Dkt. 62 at 2.)

Case 1:24-cr-00346-BMC    Document 67    Filed 02/10/25    Page 3 of 6 PageID #: 750

P a g e | 3

search included material beyond what is reflected in the "three header charts" that agents purportedly used.[2] (*Id.*)

The new search in 2024 was unlawful. A new search after a prior warrant has been executed requires a new warrant. *See United States v. Hasbajrami*, 11 Cr. 623 (LDH), 2025 WL 258090, at *7 (E.D.N.Y. Jan. 21, 2025) ("[A]bsent a warrant, the lawful acquisition of evidence does not permit the government to later search the acquired evidence, outside the confines of the original justification."); *Nejad*, 436 F. Supp. 3d at 736 (finding that "searches conducted subsequent to the completion of the responsiveness review violated the Fourth Amendment"). That rule applies even though the government still had possession of the full warrant returns. *Cf. United States v. Hasbajrami*, 945 F.3d 641, 670 (2d Cir. 2019) (stating that "[s]torage has little significance in its own right" since even where "material is justifiably retained" subsequent "querying [of] that stored data does have important Fourth Amendment implications"). It certainly applies here, where the focus of the investigation shifted and the government was considering different offenses than those previously specified. *Cf. Wey*, 256 F. Supp. 3d at 406 ("[T]he Government cites, and the Court is aware of, no authority suggesting that simply because it has retained all originally searchable electronic materials, the Government is permitted to return to the proverbial well months or years after the relevant [w]arrant has expired to make another sweep for relevant evidence, armed with newly refined search criteria and novel case theories.").

Even though a warrant was required and could have been sought, the government seemingly made no effort to obtain one. Nor could the agents have simply recreated their prior search—they purportedly had no means of comparison, the new search was broader than the header charts, and simply recreating a responsiveness report based on header files likely would not have taken more than a month.[3] And even if the government could use the two-year-old Email Warrant to conduct a new search in 2024, the delay in executing that search is well outside what courts have considered reasonable.

These issues are serious because warrants for electronic data "implicate privacy concerns far beyond those implicated by" physical searches. *Riley v. California*, 573 U.S. 373, 393 (2014); *accord Hasbajrami*, 2025 WL 258090 at *17 ("Courts across this country have recognized that emails contain some of our most private thoughts.") (collecting cases). Because the government's new search in 2024 was unlawful, the fruits of that search must be suppressed, along with any evidence acquired by using information unlawfully seized. *See, e.g.*, *United States v. Bershchansky*, 788 F.3d 102, 112 (2d Cir. 2015). At the very least, a hearing is required to resolve any factual issues related to suppression and to determine how much the government's unlawful actions may have tainted later steps in its investigation. *See Kastigar v. United States*, 406 U.S. 441, 460 (1972).

---

[2]  If the new search had not extended beyond those charts, of course, there would be no reason for the government's promise to "limit its use of responsive materials . . . to items listed on the three charts of header information." (Dkt. 62 at 2.)

[3]  Even the government's representations on this point are equivocal. (*See* Dkt. 62 at 2.) At a minimum, claims that agents "relied *primarily* on the same three header charts to regenerate what they *believed* to be an identical responsiveness report" warrant a hearing. (*Id.* (emphasis added).)

Abell Eskew Landau LLP │jschaeffer@aellaw.com │ (646) 970-7339 │ aellaw.com

Accordingly, a suppression hearing is warranted and any evidence seized pursuant to improperly executed warrants for electronic data should be suppressed.[4]

## II.     Motion to Suppress Evidence from Premises Search

*Second*, counsel for Mr. Hu seeks leave to file a motion to suppress any evidence seized by the government pursuant to a 2024 search warrant for the premises of his wine and spirits business (the "Store Warrant").

The Store Warrant is defective for numerous reasons. Most concerningly, the affidavit in support of that warrant misrepresented factual information about the operation of the store that was essential to establishing probable cause. Upon a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and "[wa]s necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks*, 438 U.S. at 155–56. "In order to invoke the *Franks* doctrine," a defendant "must show that there were intentional and material misrepresentations or omissions in [a] warrant affidavit." *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003). "A misrepresentation or omission is intentional when 'the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth.'" *Id.* (quoting *United States v. Canfield*, 212 F.3d 713, 717–18 (2d Cir. 2000)). And materiality is judged by whether "the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding." *Id.* (quoting *Canfield*, 212 F.3d. at 718).

Here, the Store Warrant made a crucial misrepresentation about when the store began operating to cast suspicion on funds deposited in the store's accounts before its official grand opening. But as the government knew or should have known at the time it sought the Store Warrant, the store began doing business *months prior* to its official grand opening, including through a lucrative "soft launch"—a common practice in the industry. That information was not disclosed to the court, unfairly implying that store deposits were suspicious. At a minimum, the omission of such relevant information was reckless and misleading. It was also material to the court's probable cause determination, as such funds were the sole facts offered to imply criminal activity at the store. *See United States v. Falso*, 544 F.3d 110, 124 (2d Cir. 2008) (quoting *United States v. Coreas*, 419 F.3d 151, 158 (2d Cir. 2005)) (observing that government "must gather 'evidence particularized to the target of the search' before the warrant application is made").

Nor was that misrepresentation the only deficiency in the Store Warrant. Among other problems, the warrant affidavit relied on generalized opinions by the affiant to establish probable cause relating to the store, rather than relevant case-specific evidence. That is not enough, because "[p]ermitting 'a search warrant based solely on the self-avowed expertise of a law-enforcement agent, without any other factual nexus to the subject property, would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect.'"

---

[4]     The government did not answer all questions posed about its review, and the defense also requests leave to move on similar grounds with respect to another 2022 warrant. That warrant, which bears docket number 22-MC-297, goes unmentioned in the government's letter and similar concerns arise about its proper execution.

*United States v. Guzman*, No. S5 97 Cr. 786 (SAS), 1998 WL 61850, at *4 (S.D.N.Y. Feb. 13, 1998) (quoting *United States v. Rosario*, 918 F. Supp. 524, 531 (D.R.I. 1996)); *accord United States v. Bertini*, No. 23 CR. 61 (PGG), 2023 WL 8258334, at *8–10 (S.D.N.Y. Nov. 29, 2023) (holding that "common sense" and agent's "training, experience, and participation in th[e] investigation" was insufficient to establish probable cause); *United States v. Garlick*, No. 22-CR-540 (VEC), 2023 WL 2575664, at *6 (S.D.N.Y. Mar. 20, 2023) (explaining that absent "independent evidence" that is "case-specific," an agent's "knowledge based on his training and experience" is "sheer speculation" and "inadequate to establish probable cause"); *United States v. Ukhuebor*, No. 20-MJ-1155 (LDH), 2021 WL 1062535, at *3 (E.D.N.Y. Mar. 19, 2021) (questioning whether "a government agent's expert opinion, standing alone" would "be sufficient to establish a link between the item to be searched and the alleged criminal activity"). It is especially problematic here, given the misleading picture already painted of the store's finances. Further, the Store Warrant lacked particularity and permitted the overbroad seizure of material entirely unrelated to the probable cause supposedly justifying its issuance.

For all of those reasons, a *Franks* hearing is necessary and any evidence seized pursuant to the Store Warrant should be suppressed.

### III.    Motion for *Monsanto* Hearing

*Third*, the defense seeks leave to file a motion requesting a *Monsanto* hearing in the event that it cannot reach an agreement with the government within the next few weeks. The defense has attempted to negotiate the release of funds sufficient to secure legal representation through trial without the necessity of a hearing, but thus far has been unsuccessful.

Defendants have a constitutional right to their counsel of choice. *See, e.g.*, *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147–148 (2006); *Wheat v. United States*, 486 U.S. 153, 159 (1988). And "the Fifth and Sixth Amendments entitle a criminal defendant seeking to use restrained funds to hire counsel of choice to an adversarial, pre-trial hearing," *United States v. Bonventre*, 720 F.3d 126, 128 (2d Cir. 2013); *United States v. Monsanto*, 924 F.2d 1186, 1191 (2d Cir. 1991), *abrogated in part on other grounds by Kaley v. United States*, 571 U.S. 320 (2014) (stating that "a pre-trial adversary hearing is required where the question of attorney's fees is implicated"), to address "whether probable cause exists to believe that the assets in dispute are traceable or otherwise sufficiently related to the crime[s] charged in the indictment." *Kaley*, 571 U.S. at 324. A defendant seeking such a hearing must show only "that he or she does not have sufficient alternative assets to fund counsel of choice," because "[t]he importance of the right at issue—to fund one's criminal defense with counsel of choice—counsels in favor of a minimal barrier to contest the restraint of needed monies." *Id.* at 131. Thus, a defendant need not "make a formal *prima facie* showing that the funds were illegitimately restrained," and at the hearing the government bears the "burden of demonstrating probable cause to believe the assets are properly forfeitable." *Id.*

The defense is prepared in its motion to "make a sufficient evidentiary showing that there are no sufficient alternative, unrestrained assets to fund [the defendants'] counsel of choice." *Bonventre*, 720 F.3d 126 at 131. That showing would rest on, among other things, the fact that the government previously seized all of the defendants' cash on hand, froze almost all of the defendants' bank accounts, took any personal items that appeared to have substantial value, filed

liens against all of defendants' real property, and even seized all of their vehicles. The value of the property sought to be forfeited by the government easily exceeds $7 million, even though the illegal proceeds alleged in the Indictment consist primarily of things like tickets with "a value of $37 or greater" and "salted ducks." (Dkt. 65 ¶ 103.) Nor is there any sufficient basis—whether in the charging instrument or in the discovery produced to date—to conclude that the People's Republic of China "facilitat[ed] of millions of dollars in transactions" for Mr. Hu's businesses in connection with the charged offenses (*id.* ¶ 11), let alone that the seized property is traceable to any such transactions.

      We are currently continuing discussions with the government to see if an agreement to avoid a *Monsanto* hearing can be reached, but are requesting leave to seek a hearing if we are unable to do so. If such a motion is necessary, it would be filed within the same period permitted for the other motions described herein. Should an agreement be reached, of course, the defense would promptly alert the Court.

      Accordingly, the defense respectfully requests leave to move for a *Monsanto* hearing.

\*\*\*

      For the foregoing reasons, the defense respectfully requests a premotion conference regarding the motions contemplated above. We thank the Court in advance for its consideration of these requests.

Respectfully submitted,

*Jarrod L. Schaeffer*

Jarrod L. Schaeffer

ABELL ESKEW LANDAU LLP
256 Fifth Avenue, 5th Floor
New York, NY 10001
(646) 970-7339
jschaeffer@aellaw.com

*Counsel for Linda Sun*

cc:    Counsel of Record (via ECF)