

U.S. Department of Justice

United States Attorney
Eastern District of New York

AFM:AAS/RMP/AS
F. #2021R00600

271 Cadman Plaza East
Brooklyn, New York 11201

July 8, 2025

By ECF

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Linda Sun and Chris Hu
                 Criminal Docket No. 24-346 (S-2) (BMC)

Dear Judge Cogan:

      The government respectfully submits this letter in opposition to the defendant Linda Sun's July 2, 2025 letter, submitted on behalf of both defendants, requesting the issuance of an order pursuant to Local Criminal Rule 23.1(h).  (ECF No. 128).  In the letter, Sun claims that a press release (the "Press Release") issued on June 26, 2025 by the U.S. Attorney's Office for the Eastern District of New York regarding the second superseding indictment (the "S-2 Indictment") and social media posts from Federal Bureau of Investigation ("FBI") senior officials (the "FBI Social Media Posts") constitute violations of Local Criminal Rule 23.1.  As discussed below, no such violation occurred, and no order pursuant to Local Criminal Rule 23.1(h) is necessary "to ensure the defendants will receive a fair trial."  (*Id.* at 8).

    I.    Factual Background

      In her letter, Sun asserts the following purported violations of Local Criminal Rule 23.1:

        (i)    The Press Release was a "*second* press release intended to generate further publicity after a trial had been scheduled," (*id*. at 2 (emphasis added));

        (ii)    The Press Release relayed the allegations against the defendants in a manner that Sun characterizes as "unequivocal," as the Press Release purportedly did not indicate that its assertions were "merely allegations," resulting in the conclusion that the assertions "can only be understood as an 'opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case," (*id.* at 3-4);

  (iii)  The U.S. Attorney's statement in the Press Release contained "impermissible commentary" that Sun characterizes as an opinion on the defendants' guilt or innocence and her character, as well as allegations not contained in the S-2 Indictment and a "broader commentary" on corruption, (*id.* at 4);

  (iv)  The FBI New York Assistant Director-in-Charge's ("ADIC") statement in the Press Release contained allegations that imply rather than allege what is contained in the S-2 Indictment, as well as purportedly "improper" commentary regarding the FBI's enforcement priorities, (*id.* at 4-5);

  (v)  The statement in the Press Release by the Special Agent-in-Charge ("SAC") of the Internal Revenue Service-Criminal Investigation office ("IRS-CI") in New York allegedly contained an improper "opinion as to the accused's guilt or innocence" that is "directed at the [people] charged, rather than the conduct alleged," (*id.* at 5);

  (vi)  The remainder of the allegations in the Press Release are, in Sun's view, "presented as fact," rather than allegations, (*id.*);

  (vii)  The Press Release was published on the U.S. Attorney's Office website and social media and sent out via email, (*id.* at 5-6); and

  (viii)  The FBI Director posted on social media a comment about the prosecution, later reposted by the FBI Deputy Director, that purportedly "disparage[s]" Sun and contains "inaccurate" and "highly prejudicial" assertions, (*id.* at 6-7).

## II. Legal Framework

  Rule 23.1(a) of the Local Criminal Rules for the United States District Courts of the Southern and Eastern Districts of New York states:

> It is the duty of the lawyer or law firm . . . not to release or authorize the release of non-public information or opinion which a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent criminal litigation with which they are associated, if there is a substantial likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.

As the text makes clear, "Rule 23.1 prohibits only those statements that are '[substantially] likely' to interfere with a fair trial or prejudice the due administration of justice." *United States v. Khan*, 538 F. Supp. 2d 929, 931 (E.D.N.Y. 2007) (quoting *United States v. Cutler*, 58 F.3d

825, 835 (2d Cir. 1995)).[1] Rule 23.1(d) lists certain topics that presumptively violate Rule 23.1(a), including statements concerning "the character or reputation of the accused" and "[a]ny opinion as to the accused's guilt or innocence." Rule 23.1(d)(1), (7).

Even for statements on these topics, however, Rule 23.1 is violated only if the Court finds that the statement is substantially "likely to interfere with a fair trial or the administration of justice." *Cutler*, 58 F.3d at 835 (discussing Local Rule 7, the predecessor to Rule 23.1, holding "we conclude that speech falling within the six [now seven] categories [of presumptively violative topics] violates Local Rule 7 only if it is also reasonably likely to interfere with a fair trial or the administration of justice"). Rule 23.1(e) lists topics that presumptively do not violate Rule 23.1, such as the "nature, substance or text of the charge, including a brief description of the offense charged." Rule 23.1(e)(3).

Where the Court finds a violation of Rule 23.1(a), it may issue "a special order governing . . . extrajudicial statements by parties." Rule 23.1(h). "In determining whether to impose such a special order, the Court shall consider whether such an order will be necessary to ensure an impartial jury and must find that other, less extreme available remedies, singly or collectively, are not feasible or would not effectively mitigate the pretrial publicity and bring about a fair trial." *Id.* Thus, "before issuing an order curtailing . . . extrajudicial speech, the court must determine that (1) the speech is likely to interfere with the accused's right to a fair trial by an impartial jury and (2) the order is necessary because no other remedies could ensure a fair trial." *United States v. Gotti*, No. 04-CR-690 (SAS), 2004 WL 2757625, at *2 (S.D.N.Y. Dec. 3, 2004); *see also Coggins v. Cnty. of Nassau*, No. 07-CV-3624 (JFB), 2014 WL 495646, at *1 (E.D.N.Y. Feb. 6, 2014) ("Before a court may impose any sort of 'gag order,' it must, among other things, determine whether other available remedies would effectively mitigate the prejudicial publicity."); *United States v. Wilson*, 925 F. Supp. 2d 410, 412 (E.D.N.Y. 2013) (same). "Among the alternative remedies to be considered are: change of venue, postponing the trial, a searching voir dire, emphatic jury instructions, and sequestration of jurors." Rule 23.1(h).

III. Analysis

A. Sun's Complaints of Impropriety All Fail

In essence, Sun's letter alleges three substantive improprieties: Either the language (i) is purportedly unequivocal and does not reflect that the actions are only alleged, (ii) asserts an opinion as to the accused's guilt or innocence, or (iii) impugns Sun's character, whether directly or through a broader commentary on corruption.[2] These complaints are unsupported, baseless, or misleading.

---

[1] In *Khan*, the court used the phrase "reasonably likely" instead of "substantially likely" because it was quoting *Cutler*, which in turn quoted language from Local Rule 7—the predecessor to Rule 23.1.

[2] Sun's other complaints are procedural in that they complain that there was a Press Release in the first instance and that the Press Release was publicized (routinely) via an official government website, social media, and email. Her complaints about publication would be

3

As an initial matter, Sun's allegations that the Press Release, including its introduction, the statements by senior officials of the U.S. Attorney's Office, FBI, and IRS-CI, and the subsequent pages of allegations are "unequivocal" and presented as "fact" are belied by the text of the Press Release and the full quotations from which Sun has drawn selective excerpts. (ECF No. 128 at 3). Indeed, the title of the Press Release notes that defendants were "charged," which language directly precedes the subheading that Sun complains is "unequivocal[]." (*Id.*) The Press Release continues, "A federal grand jury in Brooklyn yesterday returned a second superseding indictment that added charges against" the defendants, and thereafter describes in summary the new charges. Accordingly, it is clear to a reader that the subheading contained allegations from the new charges in the S-2 Indictment, rather than assertions of fact.

The U.S. Attorney's statement follows, starting with an express characterization of the charges as allegations, and thereafter focusing on the defendants' actions—not an opinion as to guilt or innocence or a comment on character:

> As *alleged*, Linda Sun not only acted as unregistered agent of the government of the People's Republic of China, but also enriched herself to

---

applicable to every press release. Further, while suggesting that it is improper to issue a second press release following the return of a superseding indictment, Sun does not cite—and the government is unaware of—any case, rule, or other applicable prohibition regarding subsequent press releases. The government, across this Office and others, has often issued subsequent press releases following the return of superseding indictments. *Compare, e.g.*, U.S. Attorney's Office for the Eastern District of New York, *Former Mexican Secretary of Public Security Arrested for Drug-Trafficking Conspiracy and Making False Statements*, available at https://www.justice.gov/usao-edny/pr/former-mexican-secretary-public-security-arrested-drug-trafficking-conspiracy-and (December 10, 2019 press release of U.S. Attorney Richard P. Donoghue announcing arrest and indictment of one defendant), *with* U.S. Attorney's Office for the Eastern District of New York, *Former Mexican Secretary of Public Security Genaro Garcia Luna Charged with Engaging in a Continuing Criminal Enterprise*, available at https://www.justice.gov/usao-edny/pr/former-mexican-secretary-public-security-genaro-garcia-luna-charged-engaging-continuing (July 30, 2020 press release of Acting U.S. Attorney Seth D. DuCharme announcing superseding indictment in same case before Your Honor, adding additional charges against same defendant and against additional defendants); *compare also* U.S. Attorney's Office for the District of Columbia, *Superseding Indictment Charges Two District Brothers in Fentanyl Conspiracy, Distribution, and Firearms Offenses*, available at https://www.justice.gov/usao-dc/pr/superseding-indictment-charges-two-district-brothers-fentanyl-conspiracy-distribution (April 10, 2024 press release of U.S. Attorney Matthew M. Graves announcing superseding indictment of two defendants), *with* U.S. Attorney's Office for the District of Columbia, *Second Superseding Indictment Charges One of Two District Brothers Accused in Fentanyl and Cocaine Conspiracy with Causing the Deaths of Two Men*, available at https://www.justice.gov/usao-dc/pr/second-superseding-indictment-charges-one-two-district-brothers-accused-fentanyl-and (June 14, 2024 press release of U.S. Attorney Matthew M. Graves announcing second superseding indictment of same two defendants).

>the tune of millions of dollars when New York State was at its most vulnerable at the start of the COVID-19 pandemic. . . . When masks, gloves, and other protective supplies were hard to find, Sun abused her position of trust to steer contracts to her associates so that she and her husband could share in the profits. We demand better from our public servants, and this Office will continue to hold accountable public officials who enrich themselves at the expense of the New York taxpayers.

(ECF No. 128, Ex. A at 2 (emphasis added)). Sun argues that the last sentence implies "law-enforcement priorities" in action, which Sun posits is an expression of an opinion regarding guilt and innocence and potentially an opinion about Sun's character. (*Id.* at 4). This argument lacks merit.

Sun cites *United States v. Silver*, 103 F. Supp. 3d 370, 378-79 (S.D.N.Y. 2015), and *United States v. Watson*, et al., No. 23 Cr. 82 (EK), ECF No. 96 at 38 (E.D.N.Y. Nov. 6, 2023), where the courts expressed concern about commentary associating the defendants with "a broader pattern of recognized wrongdoing" by *others*—in particular, the statements in *Silver* referring to other "dirty" and "corrupt" politicians, 985 F. Supp. 2d at 540, and the press release in *Watson* referring to other "corrupt executives," (E.D.N.Y. No. 23 Cr. 82, ECF No. 96 at 39). But no such tethering occurred here. Rather, the U.S. Attorney's statement is an anodyne assertion that the government will hold public officials who commit crimes accountable. On its face, there is simply no reference to other public officials who have been charged with corruption, nor any broad allegation about New York politics as was present in *Silver*.

Moreover, any statement of national or local priorities of the Department of Justice does not itself violate Rule 23.1. Courts have recognized that such statements about priorities and policies are proper. *See United States v. Woodberry*, 546 F. Supp. 3d 180, 188 (E.D.N.Y. 2021) (statement by U.S. Attorney arguing defendant's alleged crimes proved need for stricter bail laws did not violate Rule 23.1, as "the Statement was made by the U.S. Attorney himself, not by a line prosecutor assigned to the case, about an arrest for crimes that already had occurred," and "it is part of the role of a U.S. Attorney to make policies in connection with the administration of the [Office].")  In short, the U.S. Attorney's statement adheres to the rubric of Local Rule 23.1. Indeed, such statements are in virtually every press release issued by a U.S. Attorney's Office.

Sun's arguments about the FBI New York ADIC's statement fare no better. The FBI's statement is similarly couched in the charging language of the S-2 Indictment and expressly characterizes the grand jury's charges as allegations:

>During a global pandemic, Linda Sun *allegedly* leveraged her authority within the New York State government to secretly steer contracts to selective PPE vendors in exchange for millions of dollars in kickbacks to her and her husband . . . This *alleged* scheme not only created an unearned and undisclosed benefit for the defendants and their relatives, but it also exploited the state's critical need for resources in a health crisis. The FBI will never tolerate any public official who abuses their position to profit at

5

the expense of others, especially when their objectives align with foreign agendas.

(ECF No. 128, Ex. A at 2 (emphasis added)). Sun argues that the word "unearned" is "misleading" because it implies that the charges involve PPE "allegedly purchased but not received by New York," and that the FBI's last sentence improperly asserts a law enforcement priority. (ECF No. 128 at 4). Both arguments fail.

*First*, Sun reads the word "unearned" far too narrowly. As the S-2 Indictment alleges, Sun received illegal kickbacks from a company operated by her second cousin, and a kickback is, by definition, an unearned and undisclosed benefit. Moreover, the payment of an unearned kickback says nothing about the underlying contract between the company and New York State. To the extent that Sun intends to argue she earned the kickback payment, such a defense does not negate the allegations in the S-2 Indictment that form the basis of the ADIC's statement.

*Second*, Sun's reliance on the purported criticism of allegedly similar verbiage in *United States v. Corbin*, 620 F. Supp. 2d 400, 411 (E.D.N.Y. 2009), is unsupported. Notwithstanding Sun's assertion to the contrary, *Corbin* did not find similar commentary "improper." (ECF No. 128 at 5). Instead, Judge Spatt opined that a block quote of complained-of statements, which included, *among other things*, statements about holding the defendant to account, "may violate the disciplinary rules by offering opinions as to Corbin's guilt," but it was not the court's "obligation to determine such matters involving the Rules of Professional Conduct," and on the question of whether the *Corbin* press release "so permeated the public as to have hindered the ability of the Court" to pick a jury in six months, Judge Spatt found categorically that there was no violation. *Id.* at 411.[3]

Sun's complaint about the IRS-CI SAC's statement also fails. Again, the statement characterizes allegations as allegations and does not express an opinion about the defendants' guilt or innocence or Sun's character. The IRS-CI statement is as follows:

> Not only did Sun *allegedly* use Chinese money and her influence in New York State to benefit the Chinese government, it is further *alleged* that she used her position to steer multi-million dollar contracts to companies controlled by family members and friends. With this investigation, this husband-and-wife team with *supposed* ties to corruption has been rooted out, and they will soon understand that in legitimate government spending, there is no friends and family discount.

---

[3] There is also no support for Sun's assertion that Judge Spatt's concern stemmed from language in a block quote regarding Corbin being held accountable, as it is unclear what portion of the quote Judge Spatt regarded as *possibly* contrary to disciplinary rules. Moreover, in any event, Judge Spatt never held that any portion violated these rules.

6

(ECF No. 128, Ex. A at 2 (emphasis added)). Sun's complaints focus on the second sentence, asserting that this sentence expresses an opinion on guilt or innocence and is disparaging of the defendants rather than their conduct. (ECF No. 128 at 5).

The fact that the second sentence refers to the defendants does not mean that the statement is directing commentary at the defendants' character rather than their conduct. Indeed, the focus of the sentence is on the defendants' "supposed ties to corruption" and the future jury trial to determine their guilt or innocence (the defendants will "soon understand" that "there is no friends and family discount"). (ECF No. 128, Ex. A at 2). Moreover, Sun notably concedes that the import of the "friends and family discount" phrase is unclear but nonetheless asserts that the statement had "derogatory thrust." (ECF No. 128 at 5, n.8). Rule 23.1 requires more than ascribing derogatory intent to a statement the defendant herself finds confusing.

Sun's more generalized complaints about the Press Release also lack merit. The summary of allegations is not "presented as fact," (*id.* at 5), rather than allegations. Sun dismisses the numerous references to "charges," "allegations," and variations of these words as perfunctory, (*id.*), but it is unclear how else to summarize allegations in a way that would satisfy Sun. The Press Release uses variations of the word "allegation" in seven places and refers to "charges" or "charged" eight times, in addition to its inclusion of the summary statement that "[t]he charges in the superseding indictment are allegations and the defendants are presumed innocent unless and until proven guilty." (*Id.* at 4). Sun cannot prevail by pretending that these words are absent from the Press Release.[4]

The Court should similarly reject Sun's complaints concerning the FBI Social Media Posts. In particular, the FBI Director posted, "While Americans were locked down and desperate for PPE, Linda Sun and Chris Hu cashed in—*allegedly* lining their pockets while serving CCP interests. This is corruption that endangered lives. The FBI will not tolerate public officials who sell out their country." (*Id.* at 7 (emphasis added)). The Deputy Director then reposted the same content. (*Id.*). Sun's main complaint centers on language suggesting that Sun's alleged corruption endangered lives and that the FBI will not tolerate public officials selling out their country.

Sun argues that "nothing in the S-2 [Indictment] even hints that the alleged conduct involved failures to deliver PPE," but acknowledges that the S-2 Indictment expressly alleges that "millions of dollars were returned to New York by the referenced companies when they were unable to fulfill a portion of a contract." (ECF No. 128 at 5, n.7). Sun may not want to acknowledge the risks associated with steering contracts to companies from which she could financially benefit—rather than companies whose prices presumably did not account for generous kickbacks to any New York State employee. But the S-2 Indictment expressly alleges

---

[4] Sun notes the *Silver* court's rejection of the "suggestion that any prejudicial effect of otherwise improper comments is magically dispelled by sprinkling the words 'allege(d)' or 'allegation(s)' liberally throughout the press conference or speech, or by inserting a disclaimer that the accused is 'innocent unless and until proven guilty' at the end of an otherwise improper press release." (ECF No. 128 at 4, n.6 (quoting *Silver*, 103 F. Supp. 3d at 378)). Unlike the defendant in *Silver*, however, Sun has failed to show any underlying impropriety.

7

that her associated companies ultimately failed to fulfill a portion of their PPE contracts, which of course can be particularly harmful during a pandemic, especially at a time when PPE was in high demand and short supply around the world. (ECF No. 116 ¶ 120, n.3). Finally, Sun's complaint that the Director's statement that "[t]he FBI will not tolerate public officials who sell out their country," improperly disparages her also fails. As described above, this statement refers to current law enforcement priorities, a practice that courts have found permissible. *See Woodberry*, 546 F. Supp. 3d at 188.

### B. The Press Release Is Not Likely to Interfere with a Fair Trial or Prejudice the Due Administration of Justice

Assuming *arguendo* that the Press Release or FBI Social Media Posts somehow improperly commented on the defendants' character or guilt or suggested that the charges were not allegations, Sun would nonetheless fail to establish a violation of Rule 23.1 because the statements are not likely "to interfere with a fair trial or prejudice the due administration of justice." *Khan*, 538 F. Supp. 2d at 931. Although Sun suggests that the Press Release could taint a potential jury pool, "the defendant has not shown that the press release has so permeated the public as to have hindered the ability of the Court, probably some six [four] months or more from now, to impanel a fair and impartial jury in this case, especially in light of the size of the jury pool in this huge district and the searching and mitigating tools available to ensure a fair and impartial jury." *Corbin*, 620 F. Supp. 2d at 411 (rejecting challenge to press release announcing charges); *see also United States v. Skelos*, No. 15-CR-317 (KMW), 2018 WL 2849712, at *10 (S.D.N.Y. June 8, 2018) (Public statements by acting U.S. Attorney that there was "'overwhelming evidence of [the defendants'] guilt' . . . were not so prejudicial or widely disseminated that they will prevent Defendants from receiving a fair trial in this district. Instead, it is highly likely that the Court will be able to find jurors who have not been prejudiced by (or even heard of) these statements."). This applies with equal force to the FBI Social Media Posts. Accepting Sun's complaint that the FBI Social Media Posts reflect 3.8 million "views" (and accepting, against all evidence, that this statistic accurately reflects exposure to the posts by real people rather than a number vastly inflated by automated "bot" accounts or otherwise), there is no reason to believe that a substantial portion of those views on a global social media platform were attributable to people eligible to be jurors in the Eastern District of New York, nor that a substantial portion of the potential jury pool in this district follows senior FBI officials on social media, nor that in four months any such individuals would be tainted as potential jurors.

The cases Sun cites throughout her letter are inapposite and do not indicate that the Press Release or FBI Social Media Posts violated Rule 23.1. For example, in *Silver*, the U.S. Attorney held a press conference where he discussed the charges against the defendant and linked those charges to perceived corruption in New York State government generally. 103 F. Supp. 3d at 374. The U.S. Attorney then issued a press release reiterating the connection between the defendant's charges and the broader corruption issue, and the following day gave a public speech to the same effect. *Id.* at 374-75. Even under those facts, the court declined to find a violation of Rule 23.1, despite expressing that it was "troubled" that the U.S. Attorney "appeared to bundle together unproven allegations regarding the Defendant with broader commentary on corruption and a lack of transparency in certain aspects of New York State politics," which could be perceived as a "commentary on the character or guilt of the Defendant." *Id.* at 378-79.

Here, by contrast, there were no press conferences or public speeches, but rather written statements, none of which attempted to use the defendants as examples of broader criminality. To the contrary, they all followed the same model, which was to describe the charges—with each statement noting that the charges were allegations—and to reiterate the government's commitment to prosecuting similar crimes. Simply put, this case is nothing like *Silver*. *See United States v. Avenatti*, 433 F. Supp. 3d 552, 571 (S.D.N.Y. 2020) ("The press conference and press release at issue here do not involve the type of conduct that troubled the *Silver* court. U.S. Attorney Berman did not link Avenatti to a long line of convicted felons; he did not link Avenatti to larger problems in our society; and he did not repeat the challenged statements in a variety of venues and over a period of weeks.").

The government has not violated Rule 23.1, and Sun's motion should be denied.

### C. <u>An Order Under Rule 23.1(h) Is Unwarranted</u>

Even if Sun could show a violation of Rule 23.1—and she cannot—she has failed to show that the order she seeks is warranted under Rule 23.1(h). That alone is an independent and sufficient basis to deny her request.

As noted above, in order to issue an order under Rule 23.1(h), the Court must find that "the order is necessary because no other remedies could ensure a fair trial." *Gotti*, 2004 WL 2757625, at *2. The remedies sought here—(i) an official retraction of the Press Release, (ii) the deletion of the Press Release from the U.S. Attorney's website and official government social media accounts, (iii) the deletion of posts by all other official government social media accounts sharing the Press Release or commenting on the case, and (iv) a prohibition on "further extrajudicial statements to the public regarding this case," unless the defendants consent or the Court permits it (ECF No. 128 at 8)—are not necessary to ensure a fair trial, especially considering the other remedies available under Rule 23.1(h).

The Court can, for example, conduct "a searching voir dire" of any potential jurors to determine if such jurors have been exposed to any pretrial publicity and if such publicity has biased them. *See* Rule 23.1(h) ("Among the alternative remedies to be considered are: change of venue, postponing the trial, a searching voir dire, emphatic jury instructions, and sequestration of jurors."). Indeed, courts have repeatedly found that, especially in a large district like this one, a targeted voir dire can address any possible prejudice concerns. *See Woodberry*, 546 F. Supp. 3d at 192 ("Defendant has not demonstrated that the purportedly adverse pretrial publicity here is meaningfully different from the many high profile cases [that] have been tried in the Southern and Eastern Districts of New York where courts have relied on thorough voir dire examinations to produce unbiased juries."); *Avenatti*, 433 F. Supp. 3d at 569 n.8 ("In the unlikely event that a potential juror recalls the ten-month-old press conference and press release statements challenged by Avenatti, that prior knowledge is likely to emerge during the voir dire process."); *Wilson*, 925 F. Supp. 2d at 412 ("At this stage, the court is convinced that an appropriate combination of these 'alternative remedies' [under Rule 23.1(h)] will mitigate any prejudicial effects of the recent publicity on this case. Most importantly, the court is prepared to conduct an exhaustive jury selection process to empanel a fair and impartial jury."); *cf. Corbin*, 620 F. Supp. 2d at 406 (rejecting motion to enjoin news media because size of district and lack of ubiquitous publicity, "combined with the alternatives available to the Court in empaneling a

9

fair and impartial jury, including the use of screening questionnaires, a thorough and searching voir dire, and perhaps affording additional peremptory challenges to the defendant, lead the Court to conclude that the prior restraint requested is unnecessary").

Sun states in conclusory fashion that "[n]o alternative remedies are sufficient," but provides only paltry support for her conclusion. (ECF No. 128 at 8). For example, in rejecting the sufficiency of voir dire and jury instructions to ensure a fair trial, she merely asserts, without explanation, that such tools "are insufficient to remedy the damage already done by the government's smear campaign or to prevent further prejudice from whatever press statements the government or its agents may make next." (*Id.*). This weak, single-sentence offering of insufficiency is not enough to warrant the remedy requested. And on this point, it is notable that Sun nowhere cites any case where the requested relief of a retraction, deletions, and a gag order has been granted at all, much less in like circumstances. That is because under Rule 23.1(h), the Court must find that any proposed remedy is *necessary* in the sense that no other remedies would be sufficient to assure a fair trial, and Sun cannot offer a citation where a court has so found on similar facts. As other courts have held, even assuming a violation of Rule 23.1 has occurred (and it has not), the Court can assure a fair trial through the remedies listed in Rule 23.1(h) itself, and no other remedies are necessary or appropriate. Sun's motion can and should therefore be denied on this ground alone.

IV.   Conclusion

For the foregoing reasons, the government respectfully submits that the defendants' request for an order pursuant to Local Criminal Rule 23.1(h) should be denied.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:   /s/   Amanda Shami
Alexander A. Solomon
Robert M. Pollack
Amanda Shami
Assistant U.S. Attorneys
(718) 254-7000

cc:   Clerk of the Court (BMC) (by ECF)
Counsel of Record (by ECF)