

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AFM:AAS/RMP/ADR/AS
F. #2020R00600

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 12, 2025

<u>By ECF</u>

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: <u>United States v. Linda Sun and Chris Hu</u>
      <u>Criminal Docket No. 24-346 (BMC)</u>

Dear Judge Cogan:

    The government respectfully submits this letter in response to the defendants' September 5, 2025 letter concerning (and renewing their pending motions to dismiss as to) the Third Superseding Indictment ("S-3") (ECF No. 160) (the "Letter," or "Def. Let."). In the Letter, the defendants argue that the charges in the S-3 Indictment do not "relate back" to the (same) charges in the S-2 Indictment because of alterations to the charging language and therefore Counts Eight through Eleven are time-barred. The defendants misconstrue the changes in the S-3 Indictment, as well as the "relation back" doctrine, and their argument should be rejected.[1]

---

    [1] In addition to the legal argument, the government notes that the Letter also alludes vaguely to "whatever other relief maybe [*sic*] appropriate here," Def. Let. 6, without specifying or asking for any particular other relief, and apparently does so in connection with pervasive accusations and insinuations about supposed dishonesty by government counsel. *See, e.g.*, *id.* at 1 ("And the government has not been candid about [the changes to the S-3 Indictment]."); *id.* at 2 ("Those representations [to the Court and defense counsel] were misleading."); *id.* at 5 ("In no world can those amendments be truthfully characterized as [government counsel characterized them]."); *id.* at 6 ("But put aside, for a moment, the government's misrepresentations and its sharp practice . . . ."); *id.* at 6 n.1 ("[c]uriously" insinuating that government counsel lied about the need for additional time to file a brief); *id.* at 8 (speculating, perhaps sarcastically, that maybe the government "never really planned to oppose the motion [to dismiss] despite asking for an extension"). It bears emphasis that these accusations of dishonesty are utterly false and a plain manifestation of the selfsame "sharp practice" that defense counsel erroneously attributes to the government. Nevertheless, because a vague allusion to unspecified "other relief" is the only

The defendants begin with an essentially accurate—albeit pejoratively phrased—observation: "the S-3 largely regurgitates the prior indictment." Def. Let. 1. In other words (and more neutrally stated), the S-3 Indictment is substantially the same as the S-2 Indictment. The government agrees. Indeed, that is consistent with how the government described its intentions to Your Honor at the last status conference: "I believe, Your Honor, at most what we would do with respect to the instant prosecution is to return a trial indictment that may clean up a couple of minor matters. . . . But nothing really substantive added, no new substantive charges." Tr. Aug. 26, 2025, at 6:17–24. The S-3 Indictment reflects a few minor and mostly technical corrections and clarifications but is substantively identical to the S-2 Indictment: it charges exactly the same crimes, in exactly the same date ranges, in exactly the same number of counts, citing exactly the same statutes, and it adds no new allegations of misconduct at all. Even the paragraph numbering remains the same. Nevertheless, the defendants say there are "a few glaring exceptions" to this sameness that "are both galling and consequential" (and even that "the government has not been candid about them"). Def. Let. 1. The defendants then go on to highlight the changes to Counts Eight through Eleven, helpfully placing the S-2 and S-3 excerpts side by side, *id.* at 2–5, but none of the changes live up to the defendants' lofty billing.

Specifically, the changes to the honest services wire fraud charges (Counts Eight and Nine) are to add a recitation of the statutory language on the interstate or foreign wire element of wire fraud (which was previously cited in the S-2 Indictment, but that portion of the statute was not expressly stated), and, in the substantive count (Count Nine), to add express reference to specific interstate wires (which were previously alleged in the speaking portion of the S-2 Indictment and in the overt acts for Count Eleven (S-2 ¶¶ 125, 148), but not expressly re-stated in the charging language). The changes to the Section 666 bribery charges (Counts Ten and Eleven) are to add language clarifying that the charged *quid pro quo* was the kickback payments in exchange for facilitation of contracts with the NYS government (which was previously alleged in the speaking portion of the S-2 Indictment (S-2 ¶¶ 20, 118-27), but not expressly re-stated in the charging language). In sum, these changes (1) add an express recitation of statutory language rather than resting in reliance on the (already charged) statutory citation, and (2) specify which of the facts already alleged in the speaking portion are the intended referents in the charging language. These are modest and purely formal changes, which add a degree of specificity but introduce nothing whatsoever that is substantively new. Despite the fervid tone of their letter, the defendants cannot and do not claim to have been previously unaware of the wires described in Count Nine, or that the kickback payments constitute the *quid pro quo* for the bribery scheme.

The defendants also claim (this time without an illustrative excerpt) that paragraph 120 of the S-3 Indictment adds transactions that were not present in the S-2 Indictment. But in fact the alterations they allude to merely correct dates (by two days) in a transaction table and add two rows for partial refunds that were issued to the NYS government for contracts that could not be fulfilled (a separate table of contracts is also edited to remove a contract that was not executed and add two contracts entered within the same date range of the

---

tenuous connection these accusations have to legal argument, the government concludes they are gratuitously rhetorical and warrant no further response.

PPE scheme). These alterations, too, are minor corrections that add precision and specificity but do not affect the substance of the factual allegations or the charges. The defendants say of the alterations, in conclusory fashion, that "[i]n no world can [they] be truthfully characterized as 'nothing really substantive' or 'minor changes,'" Def. Mot. 5, but that is exactly what they are, by any fair reading.

The defendants' overblown characterization of the alterations in the S-3 Indictment is in service of their statute-of-limitations argument. The grand jury returned the S-3 Indictment on September 4, 2025 and the latest conduct alleged in furtherance of the crimes charged in Counts Eight through Eleven was in August 2020. Thus, the defendants amplify the changes to those counts in order to argue that they do not "relate back" to the S-2 for purposes of the statute of limitations and are therefore time-barred. But the defendants misconstrue the relation-back doctrine, at the same time as they exaggerate the changes to the S-3.

The Second Circuit's "seminal opinion in *United States v. Grady*, 544 F.2d 598 (2d Cir. 1976), governs the timeliness of a superceding indictment filed after the expiration of the statute of limitations." *United States v. Rutkoske*, 506 F.3d 170, 175 (2d Cir. 2007). The premise of the *Grady* doctrine is simple: because the filing of an indictment tolls the statute of limitations only "as to the charges contained in that indictment," *Grady*, 544 F. 2d at 601, a superseding indictment inherits the timeliness of a prior indictment to the extent that the later one stays within the scope of its predecessor and therefore "relates back" to it. "Subsequent cases applying *Grady* have stated that a superceding indictment relates back to 'a pending timely indictment' so long as the superceding indictment does not 'materially broaden or substantially amend the original charges.'" *Rutkoske*, 506 F.3d at 175. Not all changes or additions "materially broaden or substantially amend" charges, so courts evaluating whether a superseding indictment "relates back" to an earlier one "consider whether the additional pleadings allege violations of a different statute, contain different elements, rely on different evidence, or expose the defendant to a potentially greater sentence." *United States v. Salmonese*, 352 F.3d 608, 622 (2d Cir. 2003). However, "[n]o single factor is determinative; rather, the 'touchstone' of [the] analysis is notice, *i.e.*, whether the original indictment fairly alerted the defendant to the subsequent charges against him and the time period at issue." *Id.* Indeed, the law is clear that superseding indictments can even allege *entirely new conduct* in furtherance of the previously charged offenses, including previously-uncharged overt acts in support of previously-charged conspiracies, and still "relate back" to a previous indictment for purposes of the statute of limitations so long as "the additional overt acts simply flesh out or provide more detail about the originally charged crime without materially broadening or amending it." *Rutkoske*, 506 F.3d at 176 (internal quotation marks omitted).

The minor and essentially technical edits and corrections to the S-3 Indictment plainly do not materially broaden or substantially amend the charges; they do not even "flesh out or provide more detail" about the charged crimes, as would be permissible under *Rutkoske*. Rather, the S-3 Indictment still charges exactly the same crimes in exactly the same time frames based on exactly the same factual allegations as the S-2 Indictment. The defendants' mostly conclusory argument to the contrary appears to be premised on (1) an assertion that adding specificity to the charging language (by specifying in the charging language the particular wires and the *quid pro quo* that were already alleged in the speaking portion of the indictment) is an

effort "to expand the scope of [conduct] that might be considered in connection with the charged offense," Def. Mot. 3, and (2) an assumption that adding an express recitation of a "missing essential element" is *per se* a material broadening or substantial amendment. These assumptions are not supported, and they are wrong.

*First*, the addition of greater specificity clearly does not "expand the scope of" conduct within the ambit of a charged offense—if anything, it *narrows* the scope, by removing any possible ambiguity over which of the specific factual allegations (which were already present in the S-2 Indictment) underpins the more categorical (and statutory) charging language. *Second*, the elements of the crime charged are not altered by adding an express recitation of a statutory element that had been mistakenly omitted from the charging language (in contrast to, for example, adding an element to charge a different crime). Counts Eight through Eleven charge the same crimes in the S-3 Indictment that they charged in the S-2 Indictment, and the elements of those crimes are what they are, as a matter of law. If an essential element should have been but was not expressly alleged, that is at worst a curable formal defect, and the cure is superseding. Indeed, the law not only contemplates but makes special provision for exactly this: pursuant to 18 U.S.C. § 3288, if a court dismisses an indictment because of "the government's failure to allege the exact elements of the crime, or some other technicality," *United States v. Sorcher*, 498 F. Supp. 2d 603, 613 (E.D.N.Y. 2007), then the government is entitled to a six-month grace period to the statute of limitations within which to obtain a new indictment correcting the error. In other words, if the defendants had moved (which they did not do) to dismiss Counts Eight and Nine for failure to allege the "essential element" of the use of an interstate wire, and Your Honor granted the motion, then the government would be statutorily entitled to an additional six months from the date of the dismissal to return to the grand jury to cure the issue. The defendants' interpretation of the relation-back doctrine would mean the government could not return to the grand jury while the indictment is pending to make the same correction on its own initiative. Nothing in the law compels such an absurd result.

In sum, the government obtained the S-3 Indictment, just as previewed to Your Honor, as "a trial indictment" to "clean up a couple of minor matters" with "nothing really substantive added" and "no new substantive charges." Tr. Aug. 26, 2025, at 6:17–24. Every count in the S-3 Indictment relates back to the corresponding count in the S-2 Indictment—which charges the same crime within the same dates—and thus inherits its timeliness.

For that reason and the reasons already argued in earlier briefing, the government respectfully submits that the defendants' motion to dismiss should be denied in its entirety.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:   /s/
Alexander A. Solomon
Robert M. Pollack
Andrew D. Reich
Amanda Shami
Assistant U.S. Attorneys
(718) 254-7000

cc:   Clerk of the Court (BMC) (by ECF)
Counsel of record (by ECF)