

JARROD L. SCHAEFFER
646-970-7339 (direct dial)
jschaeffer@aellaw.com
aellaw.com

256 Fifth Avenue, 5th Floor
New York, New York 10001

October 2, 2025

**By ECF**

Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    *United States v. Linda Sun, a/k/a "Wen Sun," "Ling Da Sun," and "Linda Hu," and Chris Hu*, S4 24 Cr. 346 (BMC) (TAM)

Your Honor:

    We represent Linda Sun in the above-referenced matter and write pursuant to the Court's September 25, 2025 order, which directed Ms. Sun to respond to the government's motion to quash four subpoenas *duces tecum* issued pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure. (*See* Dkt. 181.) The government's motion misapprehends the circumstances, mischaracterizes the subpoenas, and unlawfully seeks to deny Ms. Sun evidence necessary for her defense at trial. In all respects, the government's motion is meritless and should be denied.[1]

## RELEVANT BACKGROUND

    The indictment in this case is 81 pages long, charges nineteen offenses, and alleges conduct purportedly spanning almost a decade. (*See generally* Dkt. 158 ("S-3").)[2] Ms. Sun is charged with twelve crimes: (*i*) conspiracy to violate the Foreign Agents Registration Act ("FARA"), in violation of 18 U.S.C. § 371 ("Count One"); (*ii*) failure to register under FARA, in violation of 22 U.S.C. §§ 612(a) and 618(a)(1) ("Count Two"); (*iii*) visa fraud, in violation of 18 U.S.C. §§ 1546(a) ("Count Three"); (*iv*) four counts of illegally bringing aliens into the United States for commercial gain or advantage, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iv) and 1324(a)(1)(B)(i) ("Counts Four through Seven"); (*v*) conspiracy to commit honest services wire fraud, in violation

---

[1]     The government's attempt to prevent Ms. Sun from obtaining evidence pursuant to properly issued subpoenas is both ironic and unfortunate, particularly given that the government is *still* issuing grand subpoenas (including within the last week) to obtain evidence for trial and coerce potential witnesses to meet in advance of trial. The double standard and unfair advantage that the government pursues here should not be endorsed by the Court.

[2]     Today the government has superseded for a fourth time, yielding the fifth indictment in this case. (*See* Dkt. 184 ("S-4").) In this response, Ms. Sun continues to cite the prior indictment and will provide a supplement if necessary based on any material changes in the S-4.

of 18 U.S.C. § 1349 ("Count Eight"); (*vi*) honest services wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346 ("Count Nine"); (*vii*) federal program bribery, in violation of 18 U.S.C. § 666 ("Count Ten"); (*viii*) conspiracy to commit offenses against the United States, in violation of 18 U.S.C. §§ 371 and 666 ("Count Eleven"); and (*ix*) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) ("Count Fourteen"). (*See* S-3 ¶¶ 131–148, 153–154.)

Despite the length and scope of the S-3, Ms. Sun's subpoenas sought specific records that are directly relevant to elements of the charged offenses and anticipated defense arguments at trial. Moreover, cognizant that Rule 17(c) requires court authorization before subpoenas may direct the pretrial production of records, *see* Fed. R. Crim. P. 17(c)(1), Ms. Sun properly provided copies of her proposed subpoenas—which are identical to those eventually signed and served—to the Court and obtained its approval prior to issuing them.

Ms. Sun's application was appropriately made *ex parte*, following the procedure routinely used for issuing defense subpoenas. *See, e.g.*, *United States v. Kwok*, No. 23 Cr. 118-1 (AT), 2024 WL 1715235, at *1 n.1 (S.D.N.Y. Apr. 22, 2024) ("The Court may adjudicate Rule 17(c) requests *ex parte* to avoid prematurely disclosing a defendant's trial strategy."); *accord United States v. Ray*, 337 F.R.D. 561, 571 (S.D.N.Y. 2020) ("Courts in this District have long followed the practice of permitting both the defense and the [g]overnment to submit *ex parte* applications for Rule 17(c) subpoenas."); *United States v. Scully*, No. 14 Cr. 208 (ADS), 2015 WL 13689061, at *1 (E.D.N.Y. Aug. 24, 2015) (noting the court granted a defendant's "*ex parte* application seeking leave of the [c]ourt to issue subpoenas . . . to obtain documents which are potentially relevant to the issues in this case . . . *ex parte* to avoid exposing aspects of his trial strategy to the [g]overnment"); *United States v. Khan*, No. 06 Cr. 255 (DLI), 2009 WL 152582, at *1 (E.D.N.Y. Jan. 20, 2009) (recounting that "the court authorized the issuance of *ex parte* subpoenas upon defendant's request, pursuant to Rule 17 of the Federal Rules of Criminal Procedure"). In her application, Ms. Sun not only explained why the records sought were relevant, admissible, and specific, she also provided charts summarizing relevance and admissibility justifications with respect to each individual request based on potential defense arguments at trial.[3] Pursuant to its "independent duty to review the propriety of the subpoena[s]," including "whether the subpoena[s] . . . comport[ed] with the requirements of Rule 17," *United States v. Vasquez*, 258 F.R.D. 68, 72 (E.D.N.Y. 2009), the Court authorized the subpoenas to be issued.

On September 22, 2025, counsel for the New York State Executive Chamber (the "NYEC") accepted service of the subpoena to the NYEC. The following day, counsel also accepted service on behalf of the New York State Office of General Services ("OGS"), Empire State Development ("ESD"), and the New York State Department of Financial Services ("DFS"). Since then, Ms. Sun

---

[3] Such materials may and must remain *ex parte*, otherwise the defense's potential arguments and trial strategies would be unfairly exposed to the government. *See, e.g.*, *United States v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y. 1995) (observing that "a party may have to detail its trial strategy or witness list in order to convince a court that the subpoena satisfies the *Nixon* standards of specificity, relevance, and admissibility"); *accord Kwok*, 2024 WL 1715235 at *1; *Ray*, 337 F.R.D. at 571; *Scully*, 2015 WL 13689061 at *1.

has had cordial and productive discussions with multiple attorneys regarding compliance by subpoenaed agencies.[4]

## LEGAL STANDARD

Pursuant to Rule 17(c)(1), "[a] subpoena may order [a] witness to produce any books, papers, documents, data, or other objects the subpoena designates" and "[t]he court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." *Id.* "Rule 17(c) subpoenas are intended to 'expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials.'" *United States v. Dupree*, No. 10 Cr. 627 (KAM), 2011 WL 2006295, at *3 (E.D.N.Y. May 23, 2011) (quoting *United States v. Nixon*, 418 U.S. 683, 698–99 (1974)). In order "[t]o meet the requirement for issuing a Rule 17(c) subpoena, the requesting party must demonstrate that the materials sought are (1) relevant; (2) admissible; and (3) specific." *Id.* (citing *Nixon*, 418 U.S. at 700). "On [a] motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive."[5] Fed. R. Crim. P. 17(c)(2).

## DISCUSSION

The records sought by Ms. Sun's subpoenas are relevant, admissible, and specific. And the subpoenas sought those records from the only likely sources: the employers for whom Ms. Sun worked during periods relevant to the charges in the S-3 and the agency primarily responsible for administering various aspects of the New York State government—including, as particularly relevant here, the procurement process for personal protective equipment ("PPE") during the COVID-19 pandemic. Each of the *Nixon* factors is addressed more fully below.

At the outset, however, Ms. Sun notes that the government largely relies on its subjective views about the S-3's allegations and the importance of certain evidence. If Ms. Sun is to contest the government's spin on the facts at trial, however, then she must be permitted to obtain evidence that the government has ignored or overlooked (inadvertently or not) so that the jury can make informed factual determinations. Ms. Sun appropriately sought to do so pursuant to Rule 17(c), and her access to evidence cannot lawfully be limited only to what *the government* believes she should have. If it is, her trial will not truly test whether the government can satisfy its burden to prove all elements of the charges beyond a reasonable doubt.

---

[4] Ms. Sun suspects that an impediment to further discussions is the government's opposition to these subpoenas, and she anticipates that denying its motion would significantly expedite the process.

[5] Although in practice it places defendants at an unfair disadvantage, in light of controlling authority Ms. Sun does not challenge the government's standing to bring this motion. *But see United States v. Nachamie*, 91 F. Supp. 2d 552, 560 (S.D.N.Y. 2000) ("If the [g]overnment had standing to move to quash whenever a subpoena was served on a potential witness, then it could move to quash virtually every Rule 17(c) subpoena merely by claiming that the recipient might become a witness. Surely, the concept of standing was not meant to be so elastic.").

## I. The Subpoenas Comply With All Legal Requirements

The government is wrong that the subpoenas authorized by the Court fail to comply with Rule 17(c) and governing caselaw. To the contrary, those subpoenas seek only specific, relevant, and admissible evidence that Ms. Sun may offer at trial in service of potential defense arguments.

### a. The subpoenas seek only relevant information.

Evidence is relevant if it has any "tendency" to make a "fact of consequence" "more or less probable than it would be without the evidence." Fed. R. Evid. 401; *see United States v. Scala*, 432 F. Supp. 2d 395, 401 (S.D.N.Y.), *adhered to on recons.*, 439 F. Supp. 2d 278 (S.D.N.Y. 2006), *aff'd*, 266 F. App'x 41 (2d Cir. 2008) (applying Rule 401 to Rule 17 and finding that certain evidence, "while far from conclusive," "would be relevant" to certain charges). For practical purposes, the records sought can be grouped into four categories:

- Specific records concerning particular interactions between New York's Governor, Lieutenant Governor, NYEC personnel, and certain other agency personnel and representatives of either the People's Republic of China ("PRC") or Taiwan. Those interactions are the same or similar in nature to what the government characterized as criminal acts by Ms. Sun.

- Specific records of certain actions and communications by state government officials regarding matters alleged in the S-3 to have been influenced or controlled by Ms. Sun at the order, direction, or request of the PRC during the charged period, including, among other things, annual messages related to the Chinese Lunar New Year.

- Specific records of state government policies, rules, or guidance—as well as certain actions and communications—that relate to Ms. Sun's job responsibilities and expectations, as well as the conduct of others in similarly-situated positions, during the period relevant to the FARA-related charges alleged in the S-3. Again, such records concern matters of the same or similar nature as what the government characterizes as criminal acts (despite the fact that Ms. Sun's alleged conduct was consistent with state policy and non-criminal activity by others in comparable positions).

- Specific records of state government policies, rules, or guidance—as well as certain actions and communications—concerning the state's efforts to procure PPE and evaluate potential vendors during the period relevant to the honest services and bribery-related charges alleged in the S-3.

All of the records sought are relevant for multiple reasons, and the government does not meaningfully suggest otherwise. Among other things, the first three categories of records would demonstrate that Ms. Sun's alleged conduct was consistent with practices understood to be permissible, if not expected, by other state officials. Such evidence would, at a minimum, be highly probative of Ms. Sun's state of mind during the relevant period and whether her alleged conduct predominantly served domestic interests. Records concerning New York's efforts to

procure PPE and evaluate potential vendors are directly relevant to any showing of materiality that the government may attempt to make at trial. Such evidence would dispel the assertion that any fraud occurred, support defense arguments that the state was not deprived of Ms. Sun's honest services or independent judgment, and refute arguments that Ms. Sun possessed the requisite intent to defraud. But those are not the only reasons the records sought are relevant.

*First*, all of the records sought are relevant because they would either corroborate the defense's understanding of the facts or undermine the government's preferred factual narrative. *Cf. United States v. Matthews*, 2005 WL 8166262, at *3 (E.D.N.Y. Aug. 1, 2005) (concluding that "[a]ny information" is relevant if it could corroborate either the government's or defendant's "account of events that occurred"). As such, the records are relevant because they would corroborate defense arguments or refute government arguments regarding key facts that the jury will be required to determine at trial.

*Second*, the records are relevant because they "speak to" elements of the charged offenses. *United States v. Yudong Zhu,* No. 13 Cr. 761, 2014 WL 5366107, at *2 (S.D.N.Y. Oct. 14, 2014). Indeed, the records sought bear directly on essential elements of various charges, including falsity, materiality, knowledge, intent, and influence, among others. The relevance of such records is plain. Where a defendant "intends to argue at trial that any failure on h[er] part to disclose information . . . was done unknowingly and without intent to obstruct" government administration, for example, "[e]vidence that [a] failure to disclose did not in fact cause" that outcome is "relevant to an argument based on lack of intent." *Id.* Similar reasoning applies here. At the very least, the records sought would be relevant to establish Ms. Sun's state of mind and to facilitate defense arguments regarding her lack of criminal intent.

*Third*, the records are relevant because a defendant "is entitled to corroborate h[er] defense" through "circumstantial evidence," which these records would provide. *United States v. Weisberg*, No. 08-CR-347 (NGG) (RML), 2011 WL 1327689, at *7 (E.D.N.Y. Apr. 5, 2011) (citing *Justice v. Hoke*, 90 F.3d 43, 49–50 (2d Cir. 1996)). The government has previously asserted that much of its evidence at trial is likely to be circumstantial. (*See, e.g.*, Dkt. 52 at 14 (conceding that "the government's proof does not include recorded telephone calls in which PRC Officials direct [Ms.] Sun's actions").) Indeed, direct evidence may be unavailable for a number of issues likely to be contested at trial, such as Ms. Sun's intent at the time of the alleged offenses, her understanding of various rules or practices, and the views of others during a particular period about whether certain information was material. As such, circumstantial evidence that corroborates defense arguments or undermines the government's allegations is highly relevant. And these records would provide corroboration for potential defense arguments on issues central to the case.

In short, the records sought are evidence that may be used by the defense at trial to refute the government's allegations regarding core elements of the charged offenses. They are indisputably relevant.

The government disagrees, but only in summary fashion. (*See* Dkt. 181 at 10.) In fact, the government's entire argument as to relevance is a conclusory statement that "[n]one of the requests even attempts to identify a particular piece of admissible evidence and, thus, the defendant has made no showing that the documents requested are 'evidentiary and relevant.'" (*Id.* (quoting *Nixon*, 418 U.S. at 699–700).) Strangely, the very next sentence acknowledges that the

government plans to "call one or more New York State employees" as witnesses and to offer records from the subpoenaed agencies at trial, which strongly suggests that the government in fact believes such records are relevant. (*Id.*) Otherwise, the government seems to say that arguments regarding relevance and admissibility should have appeared in the subpoenas themselves (*see id.*), but—as the government well knows—that is not how subpoenas work. Subpoenas are not briefs, and Ms. Sun was not required to "show how the internal New York State communications, documents, and reports she seeks meet the relevance and admissibility requirements" in a rider. (*Id.*) Ms. Sun properly presented her arguments regarding relevance, specificity, and admissibility to the Court prior to its authorization of the subpoenas, and she has now reiterated many of those arguments in response to the government's motion.

b. **The records sought are admissible.**

"[A] subpoena duces tecum permits a defendant to 'obtain and inspect *evidentiary* material prior to trial.'" *United States v. Gogic*, No. 22-CR-493 (JMA), 2025 WL 2371008, at *2 (E.D.N.Y. Aug. 14, 2025) (emphasis in original) (quoting *United States v. RW Pro. Leasing Servs. Corp.*, 228 F.R.D. 158, 161 (E.D.N.Y. 2005)). Relevant evidence is presumptively admissible. *See* Fed. R. Evid. 402. At this stage, Ms. Sun need only identify potential grounds on which the evidence sought might be admitted. *See, e.g.*, *Nixon*, 418 U.S. at 702 (finding subpoena was proper based on "valid potential evidentiary uses for the [requested] material"); *Yudong Zhu*, 2014 WL 5366107 at *2–3 (citing *Nixon,* 418 U.S. at 702) (stating subpoena may properly seek "potentially admissible" documents); *United States v. Rajaratnam*, 753 F. Supp. 2d 317, 321 n.1 (S.D.N.Y. 2011) (explaining that "potential evidentiary uses" satisfy "the 'admissibility' requirement") (explaining that "potential evidentiary uses" satisfy "the 'admissibility' requirement").[6]

At a minimum, the requested records are expected to be admissible pursuant to various hearsay exceptions.[7] For instance, most—if not all—would be admissible under the hearsay exception for business records, *see* Fed. R. Evid. 803(6), or public records, *see* Fed. R. Evid. 803(8). *Cf. United States v. Doyle*, 130 F.3d 523, 546 (2d Cir. 1997) (noting "two long-established exceptions to the rule against hearsay, those for business or government records"); *United States v. Bonomolo*, 566 F. App'x 71, 73–74 (2d Cir. 2014) (finding spreadsheets prepared by the Department of Education were properly admitted as business records). Alternatively, to the extent that representatives of the subpoenaed agencies testify at trial, the records sought may be admissible as recorded recollections, *see* Fed. R. Evid. 803(5), or prior consistent statements, *see*

---

[6] The government suggests otherwise citing *RW Pro. Leasing Servs. Corp.*, which notes that "[t]he fact that [records] are potentially relevant or may be admissible is not sufficient." 228 F.R.D. at 162. The authority on which the case relied for that point, however, makes clear that the decision was referring to materials that only "later became relevant," *United States v. Marchisio*, 344 F.2d 653, 669 (2d Cir. 1965), or were addressed by Rule 16, *United States v. Jenkins*, No. 02 Cr. 1384 (RCC), 2003 WL 1461477, at *4 (S.D.N.Y. Mar. 21, 2003). As other cases—including those cited above—confirm, courts do not require what the government implies. Indeed, an absolutist view makes no sense because the Court ultimately determines relevance and admissibility questions when evidence is actually offered at trial.

[7] The subpoenas requested certified copies of the specified records to avoid the need for extrinsic evidence of authenticity before they are admitted. *See* Fed. R. Evid. 902(4), (11).

Fed. R. Evid. 801(d)(1)(B). And the records may be admissible for a range of non-hearsay purposes, such as to prove that a particular event occurred or show the effect that an occurrence had on Ms. Sun or others. *See United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) ("[A] statement offered to show its effect on the listener is not hearsay.").

Additionally, the absence of particular records also would be admissible. At various points in the S-3, conclusory allegations assert that purported actions by Ms. Sun were at the behest of a foreign principal because they were impermissible or unauthorized under state policy or practice. The absence of records may be admissible if "the evidence is admitted to prove that the matter did not occur or exist," "a record was regularly kept for a matter of that kind," and the government "does not show that the possible source of the information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(7)(A)–(C). For example, the S-3 alleges that Ms. Sun "obtained [a] proclamation from an Office of Correspondence employee outside ordinary channels and did not follow protocol by seeking supervisory authorization to create such a proclamation." (S-3 ¶ 40.) But the defense's review of discovery produced to date indicates that those conclusory allegations are false and there was no formal policy requiring a different procedure. The lack of a contrary policy would be relevant and admissible, refuting allegations that Ms. Sun "act[ed] as an agent of PRC Consular officials" by obtaining an unauthorized proclamation. (*Id.* ¶ 39.)

### c. The subpoenas are sufficiently specific.

Ms. Sun's subpoenas are no fishing expedition. "In order to avoid speculation that the moving party is using Rule 17(c) to circumvent normal discovery requirements," a subpoena "must . . . reasonably specify the information contained or believed to be contained in the documents sought rather than merely hope that something useful will turn up." *United States v. Robinson*, No. S-1 16 Cr. 545 (ADS) (AYS), 2017 WL 1331274, at *3 (E.D.N.Y. Apr. 10, 2017) (quoting *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013)). However, "[a] defendant need not have prior knowledge of specific documents to meet the specificity requirement of Rule 17(c)." *Weisberg*, 2011 WL 1327689 at *7 (citing *Rajaratnam*, 753 F. Supp. 2d at 321 n.1). Otherwise, Rule 17 would be rendered "a nullity." *Rajaratnam*, 753 F. Supp. 2d at 320 n.1.

A defendant "cannot be said to be engaging in a 'fishing expedition'" where requests are "sufficiently narrowly focused on a group of records likely to contain helpful documents." *Weisberg*, 2011 WL 1327689, at *7; *cf. Yudong Zhu*, 2014 WL 5366107 at *2 (finding, in a bribery and honest services fraud case, that requests for results of a review conducted by the defendant's former employer relating to any "significant conflict of interest" and the employer's response were relevant to "intent" and not overbroad). All of Ms. Sun's requests are narrowed in precisely that manner—and then narrowed even further by date ranges derived from allegations in the S-3. In other words, the carefully described records in the subpoenas are identified as specifically as possible, while still reaching those records that Ms. Sun needs for her defense and has a right to obtain.

"A request is generally sufficiently specific where it limits documents to a reasonable period of time and states with reasonable particularity the subjects to which the documents relate." *RW Pro. Leasing Servs. Corp.*, 228 F.R.D. at 162 (citing *In re Grand Jury Subpoena*, No. 92 Civ. 1279, 1992 WL 142014, at *7 (E.D.N.Y. June 11, 1992)); *see also United States v. Skelos*, No. 15 Cr. 317 (KMW), 2018 WL 2254538, at *7 (S.D.N.Y. May 17, 2018), *aff'd*, 988 F.3d 645 (2d Cir.

2021) ("The request meets the specificity requirement of *Nixon* in that it specifies communications with a particular person on a particular subject matter."). The subpoenas do just that. In fact, because the charged offenses are alleged to have occurred during different periods, particular requests are further limited by date ranges tailored specifically based on each period.

Ms. Sun's requests are thus a far cry from those that courts have deemed insufficiently specific. *Compare, e.g.*, *United States v. Gogic,* No. 22 Cr. 493 (JMA), 2025 WL 2371008, at *3 (E.D.N.Y. Aug. 14, 2025) (finding request overbroad where it asked for materials "concerning events leading up to and following" the defendant's arrest and "d[id] not specify any temporal limits or relevant individuals."); *United States v. Xu*, No. 23 Cr. 133-5 (JMF), 2024 WL 4504352, at *2 (S.D.N.Y. Oct. 16, 2024) (ruling request was overbroad where it asked for "all documents and communications exchanged between" the subpoena recipient and the government regarding the defendant and others); *Skelos*, 2018 WL 2254538 at *4 (holding request overbroad where defendants were "not requesting documents of 'a specific type,' but instead any and all documents produced to [a municipal department], regardless of subject matter and regardless of whether they are financial records, phone records, invoices, insurance policies, emails, text messages, letters, or otherwise").

None of the government's arguments regarding specificity have merit.

*First*, the government maintains that certain requests "should be quashed on their face" because they "seek[] such records over an 18-year time period—well outside the charged period." (Dkt. 181 at 10.) As an initial matter, "well outside the charged period" is an overstatement—the allegations in the S-3 stretch from at least 2015 to at least 2023. (*See, e.g.*, S-3 ¶ 132.) If a date range in the subpoenas is broad, that is primarily because the government chose to make a broad period relevant. The government's assertion is also misleading, because only a limited subset of Ms. Sun's requests extends back before the charged period. And that too is a function of the government's allegations.

Ms. Sun served during two gubernatorial administrations and the government has alleged that her actions during those administrations were aberrant due to foreign influence. (*See, e.g.*, S-3 ¶¶ 14–16, 26–41.) In order to demonstrate that Ms. Sun's conduct did not influence or alter practices and outcomes related to the PRC or Taiwan, she seeks evidence of comparable activity from periods during which she was not serving in an administration. Practically, that means records about specific matters involving the PRC and Taiwan from (*i*) administrations immediately prior to that of Politician-1, which ran from 2007 through 2011 and would show that Ms. Sun's alleged conduct was consistent with past policies or practices; and (*ii*) the administration of Politician-2 after Ms. Sun left, which would show no relevant changes in policies or practices once she was gone. Given those real-world facts, a subset of Ms. Sun's requests seeks specific records from January 1, 2007, through the present. And those requests are limited solely to records of meetings, proclamations, and other public messages by the Governor, Lieutenant Governor, and NYEC personnel regarding the PRC, Taiwan, and particular matters explicitly alleged in the S-3.

All other time periods in the subpoenas are far more limited than the government claims.[8] Indeed, most of Ms. Sun's requests are limited to January 2015 through January 2024 and March 2020 through August 2020, which correspond directly to periods alleged in the S-3. (*See, e.g.*, S-3 ¶¶ 132, 143, 145.)

*Second*, the government is wrong that the records sought are "otherwise procurable." (Dkt. 181 at 10.) On this score, the government complains that it "has already produced all the information in its possession that it received pursuant to broad requests for information from recipients of" Ms. Sun's subpoenas." (*Id.*) The government conspicuously does *not* say that it has produced records responsive to Ms. Sun's requests. To the contrary, the government apparently believes there is so little overlap between what it requested and what Ms. Sun seeks that it would be "extremely impractical, if not completely impossible, to compile" the subpoenaed material before trial.[9] (*Id.*) Ms. Sun has no way to assess whether what she seeks was encompassed by the government's prior requests, because she previously asked the government to disclose its subpoena requests and it refused. And Ms. Sun has no way of assessing if the government produced everything it received from the subpoena recipients or made subjective determinations based on what the government believed to be discoverable.[10]

There are no other ways to procure the records sought. At the outset of this case, Ms. Sun requested much of the same material. (*See, e.g.*, Dkt. 49-1.) The defense has closely scrutinized the discovery, renewing and making additional requests for certain information that it believed the government ought to produce. (*See, e.g.*, Dkt. 49.) Despite those efforts, Ms. Sun has been unable to acquire the records sought. And there are no reasonable alternative sources of the state government records specified in the subpoenas. *Cf. Scala*, 432 F. Supp. 2d at 401 (satisfying this prong where "[t]here [wa]s no suggestion that the records [sought] . . . could have been obtained from any source other than" the subpoena recipient). Accordingly, Rule 17 is the appropriate avenue for obtaining this information. *See Skelos*, 2018 WL 2254538, at *6–7 (stating that "[t]o the extent that there are responsive documents that have not been produced to the [g]overnment, those documents should be produced" pursuant to the Rule 17 subpoenas).

---

[8] The government's motion focuses solely on the subpoena to the NYEC, and so Ms. Sun has focused her response accordingly. To the extent the government subsequently offers new or additional arguments, Ms. Sun respectfully reserves the right to respond to those as well. For now, it suffices to note that the time periods in all of the other subpoenas are much narrower than the government implies. The OGS subpoena, for instance, seeks records from only a few months that correspond directly with the period charged in the S-3.

[9] As discussed *infra*, that conclusory assertion is wrong for other reasons.

[10] Ms. Sun likewise has no way of evaluating whether the government's prior requests were sufficiently "broad." (Dkt. 181 at 10.) Ms. Sun's communications with counsel for the NYEC suggest that the government has more often made targeted requests, and that is corroborated by the large number of discrete productions of NYEC records the government has made. (*See* Dkts. 39, 40, 50, 64, 89, 101, 105, 111, 112, 137, 153.)

The government's further assertion that Ms. Sun "has received much of the requested material" requires little response.[11] (Dkt. 181 at 10.) Ms. Sun disagrees that she has received the records she seeks and has no intention of asking subpoena recipients to reproduce material already provided to the government. Based on her initial discussions with those recipients, her requests would in fact require them to collect and produce records not previously requested by or provided to the government. Those discussions also suggest that Ms. Sun's requests are sufficiently specific for the recipients to understand what the subpoenas seek, further undermining the government's claim that the subpoenas are insufficiently specific.

## II. The Subpoenas Do Not Circumvent the Discovery Process

Protests that Ms. Sun's subpoenas seek to circumvent discovery or secure early disclosure of witness statements are frivolous. The government's arguments and representations in that regard actually raise more questions about its compliance with its disclosure obligations.

*First*, it borders on disingenuous to claim that "[t]here is no legitimate basis for the defendant to seek internal New York State government communications regarding, among other matters, interactions with PRC and Taiwanese government officials, the award of PPE contracts, and the scheduling of meetings." (Dkt. 181 at 8.) The S-3 contains pages of allegations concerning precisely those topics and charges Ms. Sun with crimes related to them. Moreover, since the government has produced some material concerning those topics in discovery, it presumably intends to offer similar evidence at trial during its case-in-chief. While the government may *prefer* that Ms. Sun lack access to—and thus be unable to offer at trial—comparable evidence that provides important context and contradicts the government's chosen narrative, the "legitimate basis" for seeking such material is obvious.

*Second*, the government's complaint that it "expects to call at trial relevant personnel responsible for interactions with PRC and Taiwanese government officials and the award of PPE contracts" is irrelevant. (*Id.*) Contrary to the government's insinuations, Ms. Sun's subpoenas seek state records and not the early disclosure of witness statements.[12] Moreover, outside of some proposed experts (whose records were *not* subpoenaed) Ms. Sun has no idea whom the government might call as witnesses at trial. The government has not yet provided any witness statements, witness lists, or exhibit lists—in fact, to date the government has studiously avoided even disclosing the identities of individuals appearing in the S-3 under pseudonyms. The notion that Ms. Sun's subpoenas to state agencies that she used to work for are somehow an end run around Rule 26.2 and § 3500 is absurd. That is reinforced by the government's own citations, which concern cases where subpoenas were directed to particular individuals or witnesses, or sought the government's communications with those witnesses. (*See* Dkt. 181 at 8–9.)

---

[11]     To the extent the government is suggesting that Ms. Sun already has enough evidence because she received what the government thinks is sufficient, that argument is meritless and fundamentally inconsistent with our adversary system.

[12]     At the Court's direction, the government will be producing material pursuant to 18 U.S.C. § 3500 by October 6, 2025. It hardly makes sense that Ms. Sun would go through the trouble of issuing Rule 17(c) subpoenas to gain a negligible head start with material she is about to receive.

*Third*, the government's representations in service of its arguments raise serious questions about whether it should be producing the very material it seeks to deny Ms. Sun. A "prosecutor is presumed to have knowledge of all information gathered in connection with his office's investigation of the case and indeed has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." *United States v. Meregildo*, 920 F. Supp. 2d 434, 440 (S.D.N.Y. 2013), *aff'd sub nom. United States v. Pierce*, 785 F.3d 832 (2d Cir. 2015) (quoting *United States v. Avellino,* 136 F.3d 249, 255 (2d Cir. 1998)). "In the Second Circuit, a prosecutor's constructive knowledge only extends to those individuals who are 'an arm of the prosecutor' or part of the 'prosecution team.'" *Id.* at 440–41 (quoting *United States v. Gil*, 297 F.3d 93, 106 (2d Cir. 2002)). And "[w]hether someone is part of the prosecution team depends on the level of interaction between the prosecutor and the agency or individual." *Id.* at 441; *accord United States v. Morgan*, 302 F.R.D. 300, 304 (S.D.N.Y. 2014) ("[W]hether an individual or agency is part of the prosecution team depends on the facts and circumstances of the case.").

In its motion, the government represents that the subpoenaed "components of the New York State Executive Branch . . . have been cooperating extensively with the underlying investigation and instant prosecution by producing tens of thousands of documents," seemingly "on a continuing basis." (Dkt. 181 at 6.) The government also expects to procure testimony from "multiple current and former employees of the Executive Branch . . . at trial," and presumably to meet with those witnesses prior to trial in order to prepare their testimony. (*Id.*) Indeed, some material produced by the government pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), demonstrates that the government has already met with some individuals multiple times to further its investigation.

"[T]he prosecution team may 'include individuals who are not strategic decision-makers when those individuals submit to the direction of the prosecutor and aid in the [g]overnment's investigation.'" *Morgan*, 302 F.R.D. at 304 (quoting *Meregildo*, 920 F. Supp. 2d at 441). The government's new representation that these subpoenaed agencies "have been cooperating extensively with the underlying investigation and instant prosecution" (Dkt. 181 at 6) may satisfy that threshold. *Cf. United States v. Ghailani*, 687 F. Supp. 2d 365, 372 (S.D.N.Y. 2010) (finding that officials "involved in making [a] series of decisions" specified in discovery requests were part of the prosecution team because "[e]ven if those officials had no other involvement with [the] investigation or prosecution, the decisions at issue were so important to the timing and progress of this case that participation in the decisionmaking renders those individuals members of the prosecution team, at least to the extent of that participation"). And if so, the government "has a duty to learn of any favorable evidence" known to those agencies or contained within their files. *Meregildo*, 920 F. Supp. 2d at 440 (quoting *Avellino,* 136 F.3d at 255).

To date, the government has not certified that it has reviewed the files of the NYEC, OGS, ESD, and DFS for *Brady* material. In light of the upcoming trial date, Ms. Sun asks that the Court direct the government to confirm whether and when it will do so. Alternatively, if the government disputes that these agencies are part of the prosecution team or declines to review their files for *Brady* material, that only underscores the importance of denying this motion to quash so that Ms. Sun may independently obtain favorable and exculpatory evidence for use at trial.

### III. The Government's Remaining Complaints Are Meritless

The balance of the government's concerns merit only brief discussion.

*First*, the government complains that the subpoenas "improperly direct the recipients to produce the materials to the office of [Ms.] Sun's defense counsel, not to the Court." (Dkt. 181 at 7.) As noted above, Ms. Sun provided copies of the proposed subpoenas to the Court prior to their issuance. The Court authorized Ms. Sun to serve the subpoenas as drafted, and she does not understand the government to be arguing that the Court lacked authority to permit materials to be produced to a party. Indeed, in some cases the government gains standing precisely because third parties produce those materials to the government and not to the Court.[13] *See, e.g.*, *United States v. Chen De Yian*, No. 94 Cr. 719 (DLC), 1995 WL 614563, at *2 (S.D.N.Y. Oct. 19, 1995) (finding standing because, *inter alia*, the subpoena recipient had "forwarded any material responsive to the subpoena to the United States Attorney's Office"). Moreover, on September 5, 2025, the government produced records that it described as "[d]ocuments re-produced by Docusign in response to a trial subpoena . . . ."[14] Such subpoenas are also governed by Rule 17 and are "returnable at trial," *United States v. Percoco*, No. 16 Cr. 776 (VEC), 2018 WL 9539131, at *1 (S.D.N.Y. June 14, 2018), yet the government appears to have obtained copies of the subpoenaed records directly and before trial.

Regardless, the government's concern is easily remedied if necessary. Ms. Sun will happily produce to the government any material that she receives pursuant to her subpoenas. Alternatively, if directed to do so, Ms. Sun can inform counsel who accepted service that any productions should be made to the Court (though practically this may be more cumbersome for all involved). In any event, because the form of the subpoenas was approved in advance by the Court, the government's concern about the location of production does not warrant quashing them.

*Second*, the government's complaint that it "only learned of the Challenged Subpoenas after being informed by the [NYEC]," does not warrant any relief. (Dkt. 181 at 11.) Ms. Sun was under no obligation to notify the government of its trial preparations. *See Ray*, 337 F.R.D. at 569 ("The Rule . . . provides no requirement that the non-moving party be notified, and no right for the [g]overnment to oppose or move to quash *ex parte* subpoenas."). And the government is wrong that "[n]one of the four Challenged Subpoenas . . . were ordered by the Court." (Dkt. 181 at 11.) Ms. Sun sought and obtained prior authorization from the Court before the subpoenas were issued.

*Third*, the government complains that "given the multitude of wide-ranging requests, the information the defendant seeks is extremely impractical, if not completely impossible, to compile." (Dkt. 181 at 10.) That argument is interesting for several reasons, but none of them warrant quashing the subpoenas. Most importantly, it is incorrect. As noted, Ms. Sun has had

---

[13]    The defense is not aware of the government disclaiming an ability to receive such material under those circumstances.

[14]    The discovery letter does not appear to have been filed on the docket, but Ms. Sun can provide a copy to the Court if necessary. Previously, the Court had precluded the government from using certain DocuSign records improperly obtained pursuant to a grand jury subpoena, while noting that the government could procure such records through proper channels. (*See* Dkt. 149.)

productive discussions with attorneys for at least two of the subpoenaed agencies about producing responsive material. She is happy to work further with the subpoena recipients to avoid any undue burdens.[15] The government's argument is also revealing, in that it demonstrates the government does not actually believe Ms. Sun already "has received much of the requested material." (*Id.*) If the material had been collected or provided already, even re-producing it would not be "extremely impractical" or "completely impossible." (*Id.*)

*Fourth*, at various points the government complains that it has not been provided with reciprocal discovery. (Dkt. 181 at 4, 11.) It is unclear whether the government is actually asking for any relief and paradoxical that it demands reciprocal discovery while simultaneously seeking to prevent Ms. Sun from obtaining evidence to use at trial.

A defendant has no burden to introduce any evidence. *Cf. United States v. Walker*, 835 F.2d 983, 988 (2d Cir. 1987) (noting "it is serious misconduct for the prosecutor to state that the defendant has his own burden of proof"). "If a defendant requests disclosure under Rule 16(a)(1)(E) and the government complies, then the defendant must permit the government, upon request, to inspect and to copy or photograph" materials "if . . . (i) the item is within the defendant's possession, custody, or control; and (ii) the defendant intends to use the item in the defendant's case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(A). To date, however, the government has superseded four times, there is no representation that all discovery has been produced, the defense has not received 3500 material, there may be further litigation under the Classified Information Procedures Act, the government is actively seeking to prevent Ms. Sun from obtaining evidence pursuant to these subpoenas, the government has not provided any witness or exhibit lists, the defense has not heard any of the testimony or seen what evidence the government intends to offer, and trial is a month away. As such, Ms. Sun has not yet determined what evidence, if any, she may offer during her "case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(A). As she has previously, however, Ms. Sun confirms that she is aware of her obligations and will comply with them.

In sum, Ms. Sun cannot properly prepare for trial without the requested records and receiving them on the eve of trial would unreasonably delay the proceedings. The specific records sought in the subpoenas bear on elements of the charged offenses, anticipated defense arguments on key issues, and central government contentions. Ms. Sun requires that evidence to properly prepare to defend herself at trial. And because the allegations in the S-3 cover such a broad period and charge a range of different offenses, the necessary records may be voluminous. It would be unfair, unreasonable, and unjust to force Ms. Sun to delay crucial trial preparations until the trial actually begins—particularly given the government's continued use of grand jury subpoenas to prepare its case.

---

[15] That said, Ms. Sun applied for these subpoenas on September 11, 2025, proposing a return date almost three weeks later on September 30, 2025. The Court authorized the subpoenas and they were issued on September 18, 2025. Ms. Sun then immediately initiated service efforts through multiple means. Under the circumstances, Ms. Sun does not oppose extending the deadline for compliance to October 14, 2025, in order to alleviate any potential burden. Counsel for two of the agencies have already indicated that they could make productions by that date.

## CONCLUSION

Ms. Sun's subpoenas seek records that are essential to her defense at trial. The records sought are relevant, admissible, and specific. There are no other ways for Ms. Sun to procure those records, and waiting until trial would hinder her ability to prepare her defense and unreasonably delay the proceedings.

The government's motion seeks to limit Ms. Sun solely to evidence that the government—based on its own view of the case—has chosen to collect and produce to her. Limiting Ms. Sun in that manner would unnecessarily and unconstitutionally hamper her defense at trial.

Accordingly, Ms. Sun respectfully asks the Court to deny the government's motion.

Respectfully submitted,

*Jarrod L. Schaeffer*

Jarrod L. Schaeffer

ABELL ESKEW LANDAU LLP
256 Fifth Avenue, 5th Floor
New York, NY 10001
(646) 970-7339
jschaeffer@aellaw.com

*Counsel for Linda Sun*

cc:   Counsel of Record (via ECF)