

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AFM:AAS/RMP/ADR/AS
F. #2021R00600

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 6, 2025

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: United States v. Linda Sun, et al.
       Criminal Docket No. 24-346 (S-4) (BMC)

Dear Judge Cogan:

  The government respectfully submits this letter in opposition to defendant Chris Hu's supplemental motion *in limine*, dated November 04, 2025, to preclude from evidence at trial Government Exhibit 619, a key email containing false and incriminating statements by one of Hu's co-conspirators. *See* ECF No. 242. For the reasons below, Hu's motion is wrong on both the law and the facts and should be denied.

  I. Background

  As described in the S-4 Indictment, during the COVID-19 pandemic, the defendants perpetrated a fraud in which Sun facilitated contracts between the New York State government and two businesses with which she had close associations—referred to in the S-4 Indictment as the "Cousin Company" and the "Associate Company"—that resulted in these entities selling millions of dollars' worth of Chinese-sourced personal protective equipment to New York. Neither Sun nor the companies disclosed the companies' associations with Sun. The defendants directly benefited from the profits that the Associate Company earned from these contracts and received a portion of the Cousin Company's profits as kickbacks. The Cousin Company was operated by Sun's cousin (the "Cousin").

  Hu then laundered the income from the Cousin Company in multiple ways. Most relevant to this motion, in July and August 2020, Hua made $1.5 million in wire payments from a separate textile business that he owned (the "Textile Company") to accounts at a bank ("Financial Institution-1") controlled by Hu. Hu had opened these accounts in the name of a close relative (the "Relative"), just months before the payments were made. On or about May 16, 2022, Hu transferred these funds to a separate account that was also under Hu's control (the "Transfer Account"). During a recorded phone call on or about May 16, 2022, Hu discussed the wire transfer with two Financial Institution-1 employees.

Shortly thereafter, on or about July 11, 2022, one of those employees emailed the Cousin to ask about, among other things, the $1.5 million in transfers to Hu's accounts in the Relative's name. The email exchange is contained in GX 619. The Cousin responded that the Relative was one of "[the Textile Company]'s sales agents, and the wires were for their sales commission and bonus." GX 619. In reality, the Relative was not employed by the Textile Company or by the Cousin as a sales agent or in any other capacity, and the purpose of the wire was to transfer kickbacks to Hu from the Cousin Company.

II. Analysis

Hu asserts that the Cousin's statements in the email are hearsay and that they do not fall under the hearsay exception for co-conspirator statements because they were made following the completion of the charged conspiracies. Hu is wrong on both counts.

*First*, the statements are not hearsay because the government does not intend to offer them for their truth, but rather for the fact that they were made and their effect on the listener (indeed, the government intends to demonstrate that they were lies). Such statements are black letter non-hearsay. *See, e.g., United States v. Neumann*, No. 21-CR-439 (NSR), 2023 WL 8700974, at *5–6 (S.D.N.Y. Dec. 14, 2023) (admitting statement "offered for its falsity, rather than its truth" and statements "being introduced to show their falsity and their effect on the listener") (citing Fed. R. Evid. 801(c) advisory committee's note ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.") and *Anderson v. United States*, 417 U.S. 211, 219–20 (1974) (admitting statements that were intended to "establish a foundation for later showing, through other admissible evidence, that they were false")); *see also United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) ("[A] statement offered to show its effect on the listener is not hearsay."); *United States v. Gillier*, No. 23-CR-6280, 2024 WL 4344732, at *2 (2d Cir. Sept. 30, 2024) ("Because these statements were admitted for their effect on the listener and not for the truth of the matter asserted, they are not hearsay."). The government intends to offer the exhibit during the testimony of the Financial Institution-1 employee to whom the Cousin made the misrepresentations.

*Second*, even if that were not the case, the statements in GX 619 are admissible in any event as non-hearsay co-conspirator statements in furtherance of multiple conspiracies, including the uncharged conspiracy by the Cousin and Hu to launder the kickback payments from the Cousin Company's fraudulently obtained contracts.[1] The Cousin's false statements to the bank representative about his transfers (the same bank representative who handled Hu's subsequent transfers of the same funds) were undoubtedly in furtherance of, and during the course of, that conspiracy. Indeed, Hu continued to move the $1.5 million in funds received from the Cousin for some time after the Cousin's July 2022 email, including at least four additional transfers through

---

[1] Hu's reference to the money laundering conspiracy in Count Fourteen of the S-4 Indictment is mistaken—that charge relates to laundering not of the Cousin's kickbacks but of funds obtained as a result of Sun's violations of the Foreign Agents Registration Act and related offenses. *See* S-4 Indictment ¶ 154. Hu nevertheless appears to concede the existence of the uncharged conspiracy to launder the kickback money.

March 14, 2023 from the Transfer Account to several additional accounts he controlled. Thus, contrary to Hu's assertions, that conspiracy did not end in May 2022 and instead was still ongoing well past the time of the statements in GX 619. Nothing in the S-4 Indictment suggests otherwise, and Hu's selection of the date on which the funds landed in the Transfer Account as the end of the conspiracy appears to be purely tactical.

*Krulewitch* is therefore irrelevant here. The Supreme Court in *Krulewitch* rejected the government's theory that a conspiracy to commit a crime always includes "a continuing subsidiary objective . . . to conceal facts in order to prevent detection." *Krulewitch v. United States*, 336 U.S. 440, 443 (1949). But the government is not arguing here the existence of some penumbral conspiracy to conceal facts, and *Krulewitch* has nothing to say about the instant circumstances, where the uncharged money laundering conspiracy simply continued as the money moved along a chain of accounts. Nor is the uncharged nature of the conspiracy legally relevant to the statement's admissibility. Courts have uniformly concluded that a co-conspirator statement under Rule 801(d)(2)(E) need not be made in furtherance of a conspiracy charged in the indictment. *See, e.g., United States v. Orena*, 32 F.3d 704, 713 (2d Cir. 1994); *Bresnak v. Koenig*, No. 221-CV-03206, 2023 WL 3766534, at *4 (C.D. Cal. Mar. 20, 2023), report and recommendation adopted, No. 221-CV-03206, 2023 WL 3766510 (C.D. Cal. June 1, 2023) ("[C]ontrary to Petitioner's misreading of *Krulewitch*, the federal rules of evidence . . . do not require that a conspiracy be charged for coconspirator statements to be admitted under that hearsay exception.").[2]

---

[2] Notably, the Supreme Court in *Krulewitch* was not interpreting Rule 801(d)(2)(E), and instead was interpreting then-existing "federal common law rule[s] of evidence []well before the enactment of the Federal Rules of Evidence . . . ." *Zheng v. Griffin*, No. 16-CV-3368 (BMC), 2016 WL 3983546, at *7 (E.D.N.Y. July 23, 2016).

For these reasons, the statements in GX 619 are not hearsay under any analysis and Hu's motion should be denied.[3]

                                        Respectfully submitted,

                                        JOSEPH NOCELLA, JR.
                                        United States Attorney

By:     /s/ Andrew D. Reich
                                        Alexander A. Solomon
                                        Robert M. Pollack
                                        Andrew D. Reich
                                        Amanda Shami
                                        Assistant U.S. Attorneys
                                        (718) 254-7000

cc:    Clerk of the Court (by Email and ECF)
       Defense counsel (by Email and ECF)

---

[3] The statements are otherwise admissible on multiple grounds, including as direct evidence of charged conspiracies and substantive offenses, and, in the alternative, under Rule 404(b) because they go directly to the motive, knowledge and plan to secretly transfer kickback money to Hu. *See* Fed. R. Evid. Fed. R. Evid. 404(b)(2); *United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017).

4