UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
  UNITED STATES OF AMERICA,      :
                                  :
                                  :
                                  :
                                  :
            - against -           :   **<u>ORDER</u>**
                                  :
  LINDA SUN,                            :   24-cr-346 (BMC)
        also known as "Wen Sun," "Ling Da    :
        Sun," and "Linda Hu," and        :
  CHRIS HU,                              :
                                    :
                    Defendants.     :
------------------------------------------------------------ X

**COGAN**, District Judge.

This order addresses several motions *in limine* filed by both parties. The Government's motions are granted in part and denied in part. Defendants' motions are denied in part and otherwise reserved.

      1.        The Government's motion to admit evidence of $270,000 seized from the Relative's apartment is granted in part and denied in part.

           a.        As part of its investigation, the Government seized $400,000 in cash related to the Relative: $130,000 from the Relative's safety deposit box and $270,000 from the Relative's apartment. The $130,000 has already been entered into evidence. Before trial, the Relative sought return of the $270,000 under Fed R. Crim. P. 41(g). Rather than litigate, the Government acquiesced. The Government now seeks to introduce the evidence of the $270,000 (by photographs, testimony, or other means) and preclude defendants from raising the fact that the $270,000 was returned.

           b.        "[P]roperty returned to the owners [under Rule 41(g)] can still be admitted as evidence at any hearing or trial," see <u>J.B. Manning Corp. v. United States</u>, 86 F.3d 926, 927

(9th Cir. 1996), and "seized currency should be treated like any other seized property[.]" Diaz v. United States, 517 F.3d 608, 612 (2d Cir. 2008). Defendants are correct that merely possessing a large sum of cash "is not illegal and should not be treated as such." United States v. U.S. Currency in Sum of One Hundred Eighty-Five Thousand Dollars ($185,000), 455 F. Supp. 2d 145, 154 (E.D.N.Y. 2006). But that is not the issue here – the Government has proffered sufficient evidence connecting the Relative's possession of cash to the defendants' alleged crimes. The $270,000 seized from the Relative's apartment is admissible for the same reasons the $130,000 seized from the Relative's safety deposit box was admissible. Thus, the portion of the Government's motion seeking to admit evidence of the $270,000 is granted.

        c.      Rule 41(g) requires the return of "goods not in the nature of contraband, which were legally seized[.]" See Allen v. Grist Mill Capital LLC, 88 F.4th 383, 395 (2d Cir. 2023) (post-trial, "there is a presumption that non-contraband property should be returned to its owner [unless] the government [] demonstrate[s] that it has a 'legitimate reason' for retaining the seized property"); see also United States v. Gotti, 244 F. Supp. 2d 120, 125 (E.D.N.Y. 2003) (pre-trial, the defendant "was required to prove by preponderance of evidence that cash was not contraband, and defendant failed to do so"). Here, as it intends to do with the $130,000 from the Relative's safety deposit box, the Government ostensibly had grounds to forfeit the $270,000. See United States v. Jeffers, 342 U.S. 48, 54 (1951) ("Since the evidence [] seized was contraband the respondent was not entitled to have it returned to him."). Instead, though, the Government returned the funds to the Relative. Introducing the complete story of the $130,000 while censoring the disposition of the $270,000 would run afoul of the spirit of Rule 106. Defendants are entitled to argue that the return of the money shows that the Government did not think it was tainted; the Government is entitled to argue that it shows no such thing, and that it

was returned for the reasons the Government says it was returned. Thus, the portion of the Government's motion seeking to preclude evidence or argument about the return of the $270,000 is denied. The Court notes that the Government could have avoided defendants' argument not only by litigating the Rule 41(g) motion, but by conditioning the return of the property only upon a stipulation to the effect that it seeks the Court to order now.

2.        The Government's motion to admit certain communications between Sun and Hu notwithstanding the marital communication privilege is denied at this time.

a.        The Government contends that a crime-fraud exception to the marital communications privilege exists, but that is unclear. In any event, the Court need not decide whether such an exception exists because even if it did, the marital communications at issue here do not clearly qualify. The Second Circuit has floated the idea of such an exception, likening it to a heightened version of the crime-fraud exception to the attorney-client privilege. See In re Grand Jury Subpoena, 755 F.2d 1022, 1027 (2d Cir. 1985) ("The exception to the attorney-client privilege is rather easily distinguished. The attorney-client relationship, valuable as it is, is hardly of the same social importance as that of husband and wife."); see also In re Grand Jury Subpoenas Duces Tecum, 798 F.2d 32, 34 (2d Cir. 1986) ("The crime/fraud exception to the attorney-client privilege . . . applies only when there is probable cause to believe that the communications . . . were intended in some way to facilitate or to conceal the criminal activity."). It logically follows that if the marital communications at issue here would not meet the exception under the standard for the attorney-client privilege, then they would likewise fail under any purported exception to the marital privilege.

b.        The marital communications that the Government seeks to introduce ostensibly relate to Count Fourteen of the indictment. The evidence of that charge has been

admitted "subject to connection" because at the time such evidence was introduced, its connection to Count Fourteen was not clearly established.  The martial communications appear to be offered in the same vein.  But the marital communications described by the Government do not clearly reflect the defendants "inten[t] to facilitate or conceal the criminal activity" charged in Count Fourteen.  See Grand Jury Subpoenas Duces Tecum, 798 F.2d at 34.  The Court is thus unwilling to breach the privileged nature of the communications "subject to connection."

      3.      The Government's motion to preclude defendants from raising evidence or argument about Jiangsu High Hope International Group Corporation, the corporate parent of High Hope Group Jiangsu Tongtai Co. Ltd. (the "Cousin Company") is denied.  The Government has from the outset represented that the Cousin Company was "operated by one of Sun's second cousins."  The Government's suggestion of course is that Sun used her familial connection to the Cousin to obtain certain contracts.  The fact that the Cousin Company is actually a fully owned subsidiary of a major conglomerate arguably tends to undermine the Government's narrative, and which version of events is more credible is up to the jury.  The Government should have anticipated the need to explain the degree of autonomy that a subsidiary has from a parent under Chinese law, or that Chinese parent companies are not subject to the same regulatory controls as U.S. companies, or that this particular subsidiary had sufficient autonomy to undertake the conduct that the Government contends was culpable.

      4.      The Government's motion to exclude Politician-2's Lunar New Year remarks for 2022, 2023, 2024, and 2025 is denied.  As a threshold matter, these remarks are not hearsay because they are being introduced to show that Politician-2 made a certain statement at a certain time, not for the truth of anything in the statement.

a.      The Government intends to introduce evidence related to Politician-2's Lunar New Year remarks for 2021.  As the story goes, in 2021, Politician-2's speechwriter wanted to include remarks about the PRC's detention of Uyghurs in Xinjiang province.  According to the Government, Sun intervened at the behest of the PRC and altered the 2021 remarks so as to not reference the Uyghurs.  And indeed, the 2021 remarks made no such reference.

b.      Defendants want to introduce Politician-2's Lunar New Year remarks for the following four years, during which Sun did not work at the Executive Chamber and thus had no influence on their contents.  Those remarks likewise omit reference to the Uyghurs, and so defendants contend that this rebuts the Government's narrative that Sun's actions as to the 2021 remarks were at the behest of the PRC, or that it was "not serving predominantly a foreign interest."  See 22 U.S.C. § 613(d)(2).  The Government counters by hypothesizing other reasons the subsequent years' remarks omitted reference to the Uyghurs:

> It may be that no writer involved in drafting those remarks ever thought to refer to the Uyghur population at all (unlike the writer involved in drafting the 2021 remarks actually at issue in this case); or that some unknown other advisor recommended against including such a reference for reasons unaffected by surreptitious foreign agency; or that some unknown other advisor, like Sun, was secretly acting at the PRC's behest; or that the executive chamber simply followed the template that was previously crafted in part by Sun (without knowing that Sun did so in consultation with the PRC).

But the reason that the subsequent years' remarks omitted reference to the Uyghurs, much like the reason the 2021 remarks did so, is a question that the Government can argue to the jury.

5.      Defendants' motion to reconsider the Court's prior ruling striking certain portions of Adam Baruch's testimony is denied.  Defendants want to elicit testimony from Baruch to the effect of: Hu told Baruch that he received an inheritance and inquired about whether it was taxable, and in response, Baruch told Hu the inheritance was not taxable.  Defendants assert this

this testimony is not being offered to show that it is true that Hu received an inheritance, but rather its "effect on the listener." It is unclear whether defendants are referring to the "listener" as Baruch or Hu, but either way, it doesn't matter. The "effect" on either one is irrelevant and immaterial unless the statement is true. A party cannot manipulate the purpose of offering evidence when its only probative value is the truth of the statement, and the statement is hearsay.

      6.      Defendants' motion to permit the Cousin to testify by video is denied at this time.

      a.      First, the Government's arguments about the fugitive disentitlement doctrine are irrelevant. That is a permissive doctrine allowing a court to "decline to entertain the claims of a defendant who is a fugitive from justice." United States v. Bescond, 24 F.4th 759, 764 (2d Cir. 2021). The Cousin is not attempting to assert a claim, so that doctrine does not preclude his testimony.

      b.      Second, the Government is wrong that any inability to sanction the Cousin for perjury bars his testimony. Rather, this goes to the weight of his testimony, the evaluation of which would be reserved for the jury. See United States v. Gonzalez, 488 F.2d 833, 838-39 (2d Cir. 1973) ("The testimony of a fugitive from justice is rightly suspect, but not solely because of the lack of the perjury sanction. The jury is well able to weigh such testimony").

      c.      Third, the Government's concerns that "the Cousin can simply terminate the video arrangements as soon as he testifies on direct examination" are unripe. If the Cousin refuses to answer questions during, or otherwise evades, cross examination, the Court will strike his testimony. See United States v. Baker, 166 F. App'x 566, 568 (2d Cir. 2006) ("Where a defendant refuses to testify in such a situation, a district court may strike all of the direct examination that relates to matters about which the defendant refuses to testify to on cross

examination"); United States v. Russotti, 746 F.2d 945, 949 (2d Cir. 1984) ("[I]f the refusal

occurs during trial, the adverse consequence will be the striking of testimony").[1]

        d.      Fourth, the Government's reference to the Hague Convention is irrelevant

because the "Convention plainly does not apply to this proceeding." See United Kingdom v.

United States, 238 F.3d 1312, 1318 (11th Cir. 2001) ("The materials at issue here are sought for

use in a criminal proceeding; the Convention, by contrast, by its terms applies only to civil and

commercial matters.").

        e.      Fifth, the Government's contention that defendants' failure to submit a

letter rogatory to obtain this evidence is unavailing. As the Government's own cited sources

state, "[e]xecution of letters rogatory may take a year or more worldwide." Thus, pointing to the

fact that defendants were on notice of the Cousin's relevance since June 2025 does not cut in the

Government's favor. The point has some weight, however, considering that defendants should

have anticipated the need for the Cousin's testimony and pursued a way to obtain it sooner.

        f.      In any event, the Court agrees with the Government that inviting the

Cousin to testify remotely from China would run afoul of Chinese law. See Yan v. Zhou, No.

18-cv-4673, 2021 WL 4059478, at *3 (E.D.N.Y. Sept. 7, 2021) (testimony improperly taken

from those "within the borders of People's Republic of China without permission from the

authority of the People's Republic of China."); Junjiang Ji v. Jling Inc., No. 15-cv-4194, 2019

WL 1441130, at *11 (E.D.N.Y. Mar. 31, 2019) (extending the prohibition to remote testimony,

---

[1] Of course, the Government considers the Cousin to be a fugitive, and it may be the case that the Cousin invokes the Fifth Amendment to some of the Government's questions. This alone will not warrant striking the Cousin's direct testimony, however. See United States v. Brooks, 82 F.3d 50, 54 (2d Cir. 1996) ("If a witness asserts the privilege on cross-examination regarding 'collateral' matters, the witness's direct testimony need not be stricken."). "Only if the witness's assertion of the privilege 'precludes inquiry into the details of his direct testimony' so that [the other side] is deprived of the right to test the truth of his direct testimony,' must the court strike it." Id. (quoting United States v. Cardillo, 316 F.2d 606, 611 (2d Cir. 1963), cert. denied, 375 U.S. 822 (1963)).

finding that "conducting the plaintiff's trial testimony remotely while he was located in China violated Article 277 [of Chinese Civil Law]").

        g.      In response, defendants have represented that the "Cousin is prepared to testify from Hong Kong" which would ostensibly moot the international law concerns.  This work-around has been widely applied in civil cases.[2]  But in the only criminal case on point that the Court is aware of, traveling to Hong Kong or Macau was apparently not a tenable solution because "criminal depositions involving the U.S. government . . . require approval . . . regardless of the location within China."  See United States v. Feng Tao, No. 19-cr-20052, 2021 WL 5205446, at *8 (D. Kan. Nov. 9, 2021).  The Court is not willing to expose the lawyers, the parties, or the witness to the pitfalls of taking the Cousin's testimony unless it is fully satisfied that doing so would not jeopardize anyone involved.

        7.      Defendants' motion to strike evidence of proceeds unbound to charged conduct is reserved.  As the Court made clear to defense counsel at in onset, excluding this evidence on those grounds was not pragmatic:

> THE COURT: I think you have your remedies.  If they don't link it up, it can be to strike it.  If it is too overwhelming, it can be for a mistrial.  If I don't grant those and [there is] a conviction, it can be to set aside the verdict.  But I've got to hear what's going to happen before I can make those determinations.

---

[2] See, e.g., Dagen v. CFC Grp. Holdings Ltd., No. 00-cv-5682, 2003 WL 22533425, at *2 (S.D.N.Y. Nov. 7, 2003) (permitting telephonic testimony by witnesses in Hong Kong); Homedics-USA, Inc. v. Yejen Indus., Ltd., No. 05-cv-70102, 2007 WL 9700635, at *2 (E.D. Mich. June 15, 2007) ("telephonic depositions are permissible in Hong Kong, as they are in the United States"); Inventus Power v. Shenzhen Ace Battery, 339 F.R.D. 487, 506 (N.D. Ill. Sept. 30, 2021) ("the video depositions . . . can proceed in Macau because local law does not bar [it]"); Shenzen Synergy Dig. Co. v. Mingtel, Inc., No. 4:19-cv-0216, 2021 WL 6072565, at *2 (E.D. Tex. Dec. 23, 2021) (permitting remote testimony from Macau, finding that "Macau has separate legal rules from China.").  The Court notes however, that Hong Kong and Macau, since 1999, are part of China in every sense.  See generally Human Rights Watch, "Dismantling a Free Society: Hong Kong One Year after the National Security Law" (June 25, 2021), https://www.hrw.org/feature/2021/06/25/dismantling-free-society/hong-kong-one-year-after-national-security-law.

The Court has given the Government latitude in admitting evidence of Count Fourteen "subject to connection." And there are several witnesses yet to be called, and lots of evidence yet to be offered. Ruling in either direction at this juncture would therefore be inappropriate.

**SO ORDERED.**

_Brian M. Cogan_
_____
U.S.D.J.

Dated:  Brooklyn, New York
       December 1, 2025