

AFM:AAS/RMP/ADR/AS
F. #2021R00600

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 3, 2025

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:     United States v. Linda Sun, et al.
>         Criminal Docket No. 24-346 (S-4) (BMC)

Dear Judge Cogan:

        The government respectfully writes in opposition to the defendants' motion to strike Government Exhibit ("GX") 108, filed on December 2, 2025 (ECF No. 304). The defendants' motion misstates the trial record, the government's discovery, and the facts to argue, contrary to law, that the Court should strike all exhibits derived from GX 108. The Court should deny this motion for the reasons discussed below.

I.      The Defendants' Motion Misstates the Record Regarding the Foundation and Authenticity of GX 108

        As an initial matter, the defendants misstate and contort the testimony and evidence identifying GX 108. On the first day of testimony on November 12, 2025, the government identified GX 108 through Special Agent ("SA") Matthew Harris of Homeland Security Investigations ("HSI"), who testified that he was present on January 16, 2020, when two phones belonging to CC-1 were extracted by an HSI Computer Forensic Agent ("CFA"). *See* Trial Tr. 195 (Q: And you indicated just now that you took part in an extraction; is that right? A: I did, yes. I was present for that. Q: What kind of extraction? A: A [HSI] forensic agent conducted an extraction of data from [CC-1's] electronic devices. Q: What kind of electronic devices? A: Two cell phones. . . . Q: And what happened when the forensic agent received the two cell phones? A: The forensic agent has equipment that he uses to hook them up and soundly extract data from those devices. Q: And did you observe the forensic agent conduct the extraction? A: I did."). SA Harris then identified the certification of the CC-1 device extractions signed by CFA William Dempsey (whose extraction of the CC-1 devices SA Harris testified he had witnessed). (Trial Tr. at 195-96). SA Harris thereafter read CFA Dempsey's certification at GX 700 into the record. (*Id.* at 196-97).

Defendants excluded these two important details—that SA Harris witnessed the extractions and the reading of the signed certification, relegating the latter to only a passing citation as "GX 700." (ECF No. 304 at 2 (stating, after discussing only the trial testimony, that "[t]he government offered no additional witnesses, testimony, or evidence to lay a full foundation for GX-108.")). The certification, which complies with Federal Rule of Evidence 902(14), affirmed the authenticity of the extractions. These extractions were then copied to a hard drive and marked as GX 108.

Moreover, SA Harris testified that he was able to identify the drive marked GX 108 "[b]ecause [he] reviewed it ahead of testifying today, and [he] signed it, as well," (Trial Tr. 198), as the government and SA Harris indeed reviewed the drive together ahead of his testimony—opening the drive to confirm that there were two phone extractions on the device matching the details known to the government and SA Harris regarding CC-1's device extractions.[1] Defendants instead cite their more particular question of whether SA Harris compared the extractions from January 16, 2020, to the ones on the drive through "any technical processes, any hash comparisons, anything like that," (ECF No. 304 at 2), but such a question was outside of SA Harris's knowledge. Indeed, it was the CFA that affirmed that "the forensic copying process was complete and accurate because the software generated a hash (digital fingerprint) of the image, and the software explicitly indicated the extraction was successful," (GX 700), not SA Harris.

On this incomplete recitation of the facts, the defendants argue that "the government had failed to lay a proper foundation, failed to establish the authenticity of GX-108, and failed to establish a complete chain of custody." (ECF No. 304 at 2 n.1). This is incorrect, and to the extent the defendants have an issue with the chain of custody, it is settled law—as the Court stated when this issue was raised on November 13—that the remedy would be to allow the defendants to argue authenticity to the jury. (Trial Tr. at 320 ("THE COURT: . . . I do think that the threshold for authentication is so low that it's been met here and you can say to the jury—you have all you're going to get to say—you know, you don't know really where this came from or what was in it or maybe it was doctored in between, if you want to make that argument. I can't give you more information that would help you make that argument, so I am going to overrule the objection to the admissibility of the documents.")). The Court was entirely correct in its ruling, as "Rule 901 does not erect a particularly high hurdle, and the proponent of the evidence is not required to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Dhinsa*, 243 F.3d 635, 658 (2d Cir. 2001) (internal quotation marks and citations omitted). Rather, "Rule 901 is satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." *United States v. Gonzalez*, 144 F.4th 396, 406 (2d Cir. 2025) (internal quotation marks and citation omitted). That proof "may be direct or circumstantial." *United States v. Al-Moayad*, 545 F.3d 139, 172 (2d Cir. 2008) (internal citations omitted).

Indeed, the defense was offered multiple opportunities to satisfy itself as to the authenticity of GX 108—*weeks* ago, on the second day of trial. The government offered to permit

---

[1] To be clear, the government and SA Harris did not open each extraction on the drive, as the government had no authority to execute a new search on the extractions absent a new search warrant.

the Court or the defense to inspect GX 108 (*id.* at 316), and the Court offered to direct the government to recall SA Harris to allow defense counsel to cross examine him—a suggestion that was not followed up on when defense counsel articulated that a further cross "would confirm that he was not the person who did the extraction," which is a fact that is not in dispute given CFA Dempsey's certification in GX 700 (*id.* at 320).

At bottom, the defense's complaint appears to be that there is no testimony stating that the hash for the extractions completed on January 16, 2020 was compared to the extractions on the hard drive and revealed to be the same. This argument disregards Federal Rule of Evidence 902(14), which explicitly states that "no extrinsic evidence of authenticity" is required for the admission of "[d]ata copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification, as shown by a certification of a qualified person that complies with the certification requirements of Rule (902(11) or (12)."

To the extent the defense's complaint is that no testimony authenticates the process of copying the HSI examiner's certified extraction onto a hard drive, the government can easily remedy that by a certification from the agent or analyst that copied the extractions to the hard drive, in accordance with Rule 902(13). *See* FRE 902(13) ("Certified Records Generated by an Electronic Process or System. A record generated by an electronic process or system that produces an accurate result, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12). The proponent must also meet the notice requirements of Rule 902(11)."). And in any event, any issue of chain of custody is an issue of weight, not admissibility, and striking the exhibits drawn from the CC-1 devices is not the appropriate remedy. *See United States v. Morrison*, 153 F.3d 34, 57 (2d Cir. 1998) ("[b]reaks in the chain of custody do not bear upon the admissibility of evidence, only the weight of the evidence").

## II.    The Defendants Otherwise Stipulated That the Exhibits from GX 108 Are Authentic

Although the defendants declined to stipulate that CC-1's phones were searched and the extractions of those phones are contained on GX 108 (*see* Stipulation S-03 (showing defendants stipulated to their devices but not CC-1's)), the defendants nonetheless stipulated that the chats contained on GX 108 and marked as exhibits are authentic. Indeed, in Stipulation S-04, the parties stipulated and agreed that "Government Exhibits 108.05 through 108.42 consist of accurate Chinese to English translations *of true and accurate copies of records excerpted from Government Exhibit 108*." (Stipulation S-04). Government Exhibits 108.05 through 108.42 are the very chats that the defendants now seek to strike. And the remaining GX 108 exhibits were documents authenticated as having been copied in a manner that satisfies Federal Rule of Evidence 902(13). (*See* GX 703).

The defendants now seek to dismiss these as decisions made "[t]o avoid wasting the Court's time and prolonging the case for the jury," but neither a stipulation between the parties, nor a certification that contains a sworn statement complying with the Federal Rules of Evidence can be waved away as immaterial details permitted for expediency. The defendants signed Stipulation S-04 because they determined that it was in their interest to engage with the government on translations to the extent that some translations could be impacted by negotiations. Indeed, the S-04 stipulation was signed the same day that the government intended to call its

translator to authenticate its translations—which is to say that the government was fully ready to prove its chain of custody. Had the defendants not so stipulated regarding the chats on GX 108, the government would have authenticated its translations that same day and offered additional certifications regarding the original chats copied from GX 108. The defendants signed a stipulation attesting to the true and accurate nature of the underlying documents from GX 108 that the government is using, and the defendants should be held to that agreement.

III.     The Defendants' Arguments Regarding Rule 16 Fail

The defendants argue that because the government did not produce the full extractions from CC-1's phones, *i.e.*, those contained within GX 108, the government has not complied with Rule 16. This argument fails.

*First*, the defendants' argument that the government "used GX-108 in its case-in-chief at trial" fails because the government has done no such thing. Although the government marked GX 108 as an exhibit, the government did so purely to establish a chain of custody after the defendants refused to stipulate to authenticity. GX 108 serves no other purpose than to establish authenticity. In fact, consistent with its usual practice, the U.S. Attorney's Office never had in its possession a copy of the full extractions of the CC-1 phones contained in GX 108 until days before trial, and the only reason that the government requested and obtained the extractions on a hard drive was the defendants' refusal to stipulate to authenticity. It is gamesmanship to refuse to stipulate to the authenticity of documents from devices, thus requiring the government to obtain a copy of the device extractions to prove the chain of custody, and then accuse the government of some sort of discovery failure for not having produced a copy of information that the prosecution received mere days before trial due to the defendants' own refusal. It is doubly disingenuous to fault the government for not offering a "substantive stipulation" on authenticity when it was the defendants who refused to stipulate. (ECF No. 304 at 3 ("Although the government sometimes marks but does not enter electronic evidence in other cases, typically the government then identifies and authenticates responsiveness reports or extractions through some *other* appropriate method—such as competent witness testimony *or substantive stipulations*." (second emphasis added))).

*Second*, while the defendants now attack the notion that they are not "entitled to receive or examine" GX 108 (ECF No. 304 at 3), the defendants indeed acknowledged that they are not entitled to the full extractions on the second day of trial. (Trial Tr. 315 ("MR. SCHAEFFER: . . . And we have the additional problem that the Government cannot offer into evidence the full hard drive containing the full extraction because that has never been produced to the defense in this case because we were not entitled to it."); *see id.* at 317 (in response to the government's suggestion that the Court can inspect the drive or defense counsel, defense counsel stated "I think it's a slightly larger problem because the defense has never been entitled to have the full extraction because this was obtained in a different way. So, it's not like we can compare it.")). Notwithstanding their complete position shift now, the defendants are not entitled to rummage through the full extraction of a third party's device—and the government is not entitled to search a third party's device without complying with the Fourth Amendment.

The defendants' motion thus appears to be asking the Court to punish the government for not acceding to the defendants' demands that the government and the Court

sponsor the violation of a third party's Fourth Amendment privacy interest on the off chance that there *may* be something in the device that the defendants *may* want to use. There is no support for such a position. In *United States v. Collins*, a district court rejected a similar attempt by defendants who sought the production of the complete contents of third party's iCloud account. 409 F. Supp. 3d 228, 243 (S.D.N.Y. 2019). The court accepted the government's proffer that it had conducted a search for *Brady* and Rule 16 material consistent with its obligations, which is the appropriate conclusion here given the government's repeated affirmations that it has searched the CC-1 devices for *Brady* and Rule 16 material. *Id.* Further to this point, as in *Collins*, this Court should conclude that the defendants have failed to "articulate[] a sufficient reason to believe that the government's efforts were deficient such that it has failed to meet its *Brady* obligations" *Id.* (quotations omitted)). Also relevant is the finding of the *Collins* court that the defendants' argument that the government should turn over a third party's full iCloud was "legally flawed": a third party "has a privacy interest in his iCloud data," and the government's "possession of and ability to review [the third party's date] is necessarily circumscribed by the Fourth Amendment." *Id.* at 244. Indeed, Your Honor relied on *Collins* in the April 28, 2025 order granting Linda Sun's motion to suppress the 2024 search of the 2022 Gmail returns because "[t]he [g]overnment—having conducted a search of [the third party's] iCloud data consistent with the Fourth Amendment . . .—does not have the legal authority to go back and search materials that are non-responsive, *i.e.*, outside the scope of the search warrant." *Id.*

The same principle applies with equal force here. There is no support for the defendants' apparent argument that the government's "*Brady* obligation is superior to and takes precedence over an individual's Fourth Amendment rights." *Id.* The government has met its obligations, and the defendants' speculation is not sufficient to trample the Fourth Amendment rights of a third party. And it is for these same reasons that the defendants' arguments regarding materiality fail—defendants' assertion that "GX-108 is a unique source of statements by, and information regarding, CC-1 that the defense *might* be able to utilize" does not articulate materiality, but rather speculation. (ECF No. 304 at 4 (emphasis added)). And it is well settled that Rule 16 "does not entitle a criminal defendant to a 'broad and blind fishing expedition among [items] possessed by the Government on the chance that something impeaching might turn up.'" *United States v. Larranga Lopez*, No. 05 Cr. 655 (SLT), 2006 WL 1307963, at *8 (E.D.N.Y. May 11, 2006) (alteration in original) (citing *Jencks v. United States*, 353 U.S. 657, 667 (1957) (quoting *Gordon v. United States*, 344 U.S. 414, 419 (1953)). "There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) ("Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance." (citation omitted)); *United States v. Evanchik*, 413 F.2d 950, 953 (2d Cir. 1969) ("Neither [*Brady* ] nor any other case requires the government to afford a criminal defendant a general right of discovery.").

*Third*, the government has admitted and published to the jury—and thus has relied on as substantive evidence—only those chats and attachments from the CC-1 devices that have been in the possession of the defendants for almost a year in their original form and in translation for most of this year. There is thus no question that the defendants have had access to these records and that the government has met its discovery obligations in turning over records that it is now relying on in its case-in-chief. Nowhere in the defense's motion is there even the slightest suggestion that the defendants did not receive the exhibits derived from CC-1's phones. And for the avoidance of doubt, the below table outlines the bates stamps and production dates for the

responsive report containing each of the exhibits in the GX 108 series, including the production dates of English translations. The below table makes it clear that the defendants had ample time to contest the authenticity of these chats, but have declined to do so until now—two days before the government expects it will rest.

| GX | Responsive Report Bates | Responsive Report Production Date | Translation Bates Stamp | Translation Production Date |
|---|---|---|---|---|
| 108.05 | EDNY_049975 | 12/31/2024 | EDNY_053145 | 3/12/2025 |
| 108.05-A | EDNY_049975 | 12/31/2024 | N/A (English) | N/A |
| 108.05-B | EDNY_049975 | 12/31/2024 | N/A (English) | N/A |
| 108.06 | EDNY_049975 | 12/31/2024 | EDNY_053145 | 3/12/2025 |
| 108.06-A | EDNY_049975 | 12/31/2024 | N/A (English) | N/A |
| 108.06-B | EDNY_049975 | 12/31/2024 | N/A (English) | N/A |
| 108.06-C | EDNY_049975 | 12/31/2024 | N/A (English) | N/A |
| 108.07 | EDNY_049975 | 12/31/2024 | EDNY_053145 | 3/12/2025 |
| 108.08 | EDNY_049975 | 12/31/2024 | EDNY_053145 | 3/12/2025 |
| 108.09 | EDNY_049975 | 12/31/2024 | EDNY_053145 | 3/12/2025 |
| 108.10 | EDNY_049975 | 12/31/2024 | EDNY_053145 | 3/12/2025 |
| 108.11 | EDNY_049975 | 12/31/2024 | EDNY_054426 | 4/8/2025 |
| 108.12 | EDNY_049975 | 12/31/2024 | EDNY_054426 | 4/8/2025 |
| 108.13 | EDNY_049975 | 12/31/2024 | EDNY_054426 | 4/8/2025 |
| 108.14 | EDNY_049975 | 12/31/2024 | EDNY_054426 | 4/8/2025 |
| 108.15 | EDNY_049975 | 12/31/2024 | EDNY_054426 | 4/8/2025 |
| 108.16 | EDNY_049975 | 12/31/2024 | EDNY_054426 | 4/8/2025 |
| 108.17 | EDNY_049975 | 12/31/2024 | EDNY_054426 | 4/8/2025 |
| 108.18 | EDNY_049975 | 12/31/2024 | EDNY_054426 | 4/8/2025 |
| 108.19 | EDNY_049975 | 12/31/2024 | EDNY_054426 | 4/8/2025 |
| 108.20 | EDNY_049975 | 12/31/2024 | EDNY_054426 | 4/8/2025 |
| 108.21 | EDNY_049975 | 12/31/2024 | EDNY_054426 | 4/8/2025 |
| 108.22 | EDNY_049975 | 12/31/2024 | EDNY_054464-EDNY_054477 | 4/8/2025 |
| 108.23 | EDNY_049975 | 12/31/2024 | EDNY_133241 | 4/22/2025 |
| 108.24 | EDNY_049975 | 12/31/2024 | EDNY_133241 | 4/22/2025 |
| 108.25 | EDNY_049975 | 12/31/2024 | EDNY_133241 | 4/22/2025 |
| 108.26 | EDNY_049975 | 12/31/2024 | EDNY_133241 | 4/22/2025 |
| 108.27 | EDNY_049975 | 12/31/2024 | EDNY_133241 | 4/22/2025 |
| 108.28 | EDNY_049975 | 12/31/2024 | EDNY_133241 | 4/22/2025 |
| 108.29 | EDNY_049975 | 12/31/2024 | EDNY_133241 | 4/22/2025 |
| 108.30 | EDNY_049975 | 12/31/2024 | EDNY_053146 | 3/12/2025 |
| 108.31 | EDNY_049975 | 12/31/2024 | EDNY_053146 | 3/12/2025 |

| GX | Responsive Report Bates | Responsive Report Production Date | Translation Bates Stamp | Translation Production Date |
|---|---|---|---|---|
| 108.32 | EDNY_049975 | 12/31/2024 | EDNY_053146 | 3/12/2025 |
| 108.33 | EDNY_049975 | 12/31/2024 | EDNY_053146 | 3/12/2025 |
| 108.34 | EDNY_049975 | 12/31/2024 | EDNY_053146 | 3/12/2025 |
| 108.35 | EDNY_049975 | 12/31/2024 | EDNY_053146 | 3/12/2025 |
| 108.35-A | EDNY_049975 | 12/31/2024 | N/A (English) | N/A |
| 108.35-B | EDNY_049975 | 12/31/2024 | N/A (English) | N/A |
| 108.35-C | EDNY_049975 | 12/31/2024 | N/A (English) | N/A |
| 108.36 | EDNY_049975 | 12/31/2024 | EDNY_053146 | 3/12/2025 |
| 108.37 | EDNY_049975 | 12/31/2024 | EDNY_053146 | 3/12/2025 |
| 108.38 | EDNY_049975 | 12/31/2024 | EDNY_053146 | 3/12/2025 |
| 108.39 | EDNY_049975 | 12/31/2024 | EDNY_053146 | 3/12/2025 |
| 108.40 | EDNY_049975 | 12/31/2024 | EDNY_053146 | 3/12/2025 |
| 108.41 | EDNY_049975 | 12/31/2024 | EDNY_053146 | 3/12/2025 |
| 108.42 | EDNY_049975 | 12/31/2024 | EDNY_053146 | 3/12/2025 |

The above table also makes clear that the government's exhibits are in fact limited to five conversations: (i) exhibits derived from a translation produced at EDNY_053145 (chat between CC-1 and a PRC official); (ii) exhibits derived from a translation produced at EDNY_054426 (chat between CC-1 and CC-2); (iii) exhibits derived from a translation produced at EDNY_054464-EDNY_054477 (group chat between CC-1, Linda Sun, an unindicted co-conspirator, and others); (iv) exhibits derived from a translation produced at EDNY_133241 (chat between CC-1 and an unindicted co-conspirator); and (v) exhibits derived from a translation produced at EDNY_053146 (chat between CC-1 and Linda Sun)—all of which the defendants received in full. Thus, the defendants' complaint that "the government reviewed [the CC-1 phones] at its leisure and later selected items to produce to the defense," and that somehow, as a result, they are unable to offer "other communications or information for necessary context or to impeach the offered statements," (ECF No 304 at 4), is false. The defendants have the complete chats that the government has excerpted—including in translation—from CC-1's devices to offer for completeness if admissible. Not only that, but also the government's responsive report for the primary CC-1 device—the device from which all of the government's 108-series exhibits come from—includes a total of 34 chat threads (*i.e.*, 29 more than the government has used for exhibits, with all 34 totaling over 10,000 text messages), 19 other instant messages, and 69 documents—which is far larger and broader in volume than the defendants' motion appears to suggest. In fact, the responsive report provided to the defense includes multiple chats with the above referenced PRC official, CC-2, Linda Sun, and the above-referenced unindicted co-conspirator, not just the ones the government focused on as part of its case-in-chief.[2]

---

[2] The government also notes that the responsive report itself notes that it comes from extractions created on January 16, 2020—the date that, per SA Harris's testimony and CFA Dempsey's certification, CC-1's phones were extracted. *See Gonzalez*, 144 F.4th at 406 (once a

IV.     Conclusion

        For the reasons discussed above, the Court should deny the defense's motion to strike GX 108 and all exhibits derived from GX 108.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:          /s/  Amanda Shami       
                Alexander A. Solomon
                Robert M. Pollack
                Andrew D. Reich
                Amanda Shami
                Assistant U.S. Attorneys
                (718) 254-7000

cc:    Clerk of the Court (by Email and ECF)
        Defense counsel (by Email and ECF)

---

*prima facie* showing of authenticity is made, "the opposing party remains free to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning, but these and similar other challenges go to the weight, not the admissibility, of the evidence").